Samander Alemi (SBN 325305)
Email: sam@alemilaws.com
Luiza V. Dias (SBN 320629)
Email: luiza@volawintl.com
**ALEMI LAW**
3233 Oakleaf Ct.
Chino Hills, California, 91709
Tel.: 916-837-2041
Fax: 619-535-0115

Attorneys for Plaintiffs, Katherine Robles and
H.R. by and through his Guardian
Ad Litem Katherine Robles.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE ROBLES, an individual; and H.R., by and through his guardian ad litem Katherine Robles;<br><br>　　　　　Plaintiffs,<br>　　v.<br><br>CITY OF ROSEVILLE, a Municipal Corporation; OFFICER DEAN RIANO, in his official and personal capacity; OFFICER SETH ADDINGTON, in his official and personal capacity; SERGEANT CHRISTOPHER CIAMPA, in his official and personal capacity; and DOES 1-20, inclusive, individually, jointly and severally,<br><br>　　　　　Defendants. | CASE NO.: _____<br><br><br>**CIVIL ACTION FOR DAMAGES**<br>(42 U.S.C. § 1983 and pendent tort claims)<br><br><br><br>JURY TRIAL DEMANDED |

**INTRODUCTION**

1. This is a civil action arising from the unlawful arrest, with the use of extremely unreasonable and excessive force, of Plaintiff Katherine Robles on February 21, 2021, at Profile Nails Salon in the County of Placer, City of Roseville, California. Defendants, uniformed police officers employed by the City of Roseville Police Department, arrested Katherine Robles without probable cause, used unreasonable and unnecessary force during the arrest, inflicted serious and permanent injuries that were so severe and pervasive which resulted in, amongst others, permanent traumatic brain injury. Additionally, Defendants unlawfully denied Plaintiff necessary medical treatment that was clearly necessitated. The Defendants and DOES 1-20 are being sued for violations of Katherine Robles' rights under the United States Constitution and the common law. The horrific and traumatic scenes all took place in front of Plaintiff Katherine Robles' seven year old minor child and fifteen year old daughter, resulting in severe infliction of emotional distress to not only her, but her children as well.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction to decide upon the federal civil rights violations in this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)-(4) and has supplemental jurisdiction to hear the common law claims under 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. § 1391 because the acts giving rise to this lawsuit occurred in the City of Roseville, County of Placer, California.

4. The City of Roseville was given timely notice of this claim under the California Tort Claims Act, by a letter to the City of Roseville sent on April 07, 2021. The City of

Roseville rejected the claim on July 21, 2021, giving rise to this suit.

**PARTIES**

5.  Plaintiff Katherine Robles (hereinafter "Ms. Robles"), is a dedicated 38-year-old mother of three children, who has had her career and dreams destroyed by the brutal attack inflicted upon her by the employees of the City. At all times relevant herein, Ms. Robles was a resident of Placer County, California.

6.  Plaintiff H.R. (hereinafter "H.R."), a minor, is a 7-year-old special needs child who suffers from mental disabilities, including, but not limited to, impulsive disorder, posttraumatic stress disorder, and sensory deficiencies. At all times, including the occurrence of the incident, H.R. resided with his mother and two siblings in Placer County.

7.  The City of Roseville (hereinafter "City") is a municipal corporation with the right to sue and be sued. It is responsible for the policies and procedures of the City of Roseville Police Department and the police officers it employs and trains. At all times herein mentioned, the City possessed the power and authority to adopt policies and prescribed rules, regulations and practices affecting the operation of the City Police Department and its tactics, methods, practices, customs and usage. At all relevant times, City was the employer of DOES 1-20 Defendants. City is vicariously liable under principles of respondeat superior for the California state law violations alleged against the individual defendant officers.

8.  At all times relevant to the Complaint, Officer Dean Riano (hereinafter "Riano") was a duly sworn and licensed police officer of the City of Roseville Police Department, acting under color of law and within the scope of his employment. He is sued in his official and individual capacity.

9. At all times relevant to the Complaint, Officer Seth Addington (hereinafter "Addington") was a duly sworn and licensed police officer of the City of Roseville Police Department, acting under color of law and within the scope of his employment. He is sued in his official and individual capacity.

10. At all times relevant to the Complaint, Sergeant Christopher Ciampa (hereinafter "Ciampa") was a duly sworn and licensed police officer of the City of Roseville Police Department, acting under color of law and within the scope of his employment. He is sued in his official and individual capacity.

11. At all times relevant to the Complaint, Defendant City of Roseville employed the individual Defendant Police Officers whose actual identities are presently unknown to Plaintiff (Identified as DOES 1 through 10). These presently unknown Defendant Police Officers, were acting within the course and scope of their employment and are sued under fictitious names herein, as DOES I through 10.

12. The true names and capacities of the Defendants named herein as DOES 10-20, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who thereafter sue such Defendants by fictitious names. Plaintiffs are informed and believe that such DOE Defendants are California residents. Plaintiffs will amend this Complaint to show such true names and capacities once they have been determined. Each Defendant was an agent of the other Defendants and ratified the improper conduct of the other Defendants and the other employees of the other Defendants, all while doing nothing to prevent it despite the traumatic injuries suffered by Plaintiff at the hands of the above-mentioned Defendants.

///

13. Whenever in this Complaint reference is made to "Defendants, and each of them," such allegation shall be deemed to mean the acts of Defendants acting individually, jointly and/or severally.

14. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants acted with intent to cause harm, malice, and are negligently responsible in some manner for the occurrences herein alleged, and Plaintiffs' injuries as herein alleged were proximately caused by Defendants' negligence.

15. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, each of the Defendants sued herein as a "DOE" was the agent and/or employee of each of the remaining Defendants, and was at all times acting within the purpose and scope of such agency and/or employment.

### **STATEMENT OF FACTS**

16. On Sunday morning of February 21, 2021, Ms. Robles along with her two children, AR and H.R., went to Profile Nails Salon located at 1730 Santa Clara Drive, Roseville, California, for salon services.

17. H.R. was 7 years-old at the time of the incident and had been diagnosed as a special needs child due to his mental disabilities. H.R. suffers from sensory deficiency, impulsive disorder, and post traumatic stress disorder.

18. It is important to note that this entire family has severe trauma resulting from a history of physical domestic violence acts committed against Ms. Robles by her former husband, most of which were witnessed by her minor children.

/ / /

19. Ms. Robles entered the salon with her family and sat H.R. down on a chair with his Ipad while her and her daughter A.R. got their nails done.

20. Amanda Hicks, another customer at the salon, was sitting about five feet from H.R. and became irritated by the fact that H.R. was speaking and behaving like any ordinary child, with mental disabilities. Children with these types of disabilities generally are unable to control sound, both when heard and spoken. Amanda Hicks, irritated, began to say rude things to the 7 year old child, such as "why can't you be quiet, just sit still, stop making noise," as well as other nasty verbal commands demanding him to behave in a manner in which she deemed appropriate. Given H.R.'s disabilities along with his young age, H.R. was not able to understand and comprehend what Amanda Hicks was asking of him.

21. In fact, even if H.R. had no disabilities, he was not doing anything out of the ordinary or so excessively outrageous that any other child his age would not do. He was simply sitting in the salon chair playing with his electronic device. None of this behavior warranted or justified Amanda Hick's explosive reactions, derogatory statements, and assault made towards the minor child.

22. A.R., in an attempt to protect her little brother H.R. from the verbal abuse and unnecessary bullying by this adult woman, began to ask Amanda Hicks to stop. Amanda Hicks, being the bully that she is, did not back down but retaliated even more maliciously at the Robles family. She began to curse and yell horrible things in front of the minor children, their mother, and everyone in the salon, such as: "you're crazy...crazy ass family, get out of here...you psychotic family". Once Ms. Robles realized that Amanda Hicks had no intentions of backing off and would not stop harassing her family, she called 911.

23. Ms. Robles was on the phone with the 911 dispatcher when suddenly Amanda Hicks threw a book at her children as they proceeded to walk out of the salon and away from the harassment. Ms. Robles immediately relayed to the dispatcher that a woman had just assaulted her children. Not knowing how far Amanda Hicks would go to cause harm to the family, and in fear of her children's safety and as well as her own, Ms. Robles goes outside to wait for the police to arrive.

24. Defendant Officer Riano and Defendant Officer Addington of the Roseville Police Department, in full police uniform, arrived at the salon and approached the Plaintiffs to gain more information surrounding the 911 call. Addington spoke to Ms. Robles while Riano went inside to examine surveillance footage of the assault by Amanda Hicks.

25. Defendant Riano sees the footage of the assault and goes on to admit to everyone at the salon, including Amanda Hicks, that Amanda did in fact commit an assault by throwing the book at the Robles children. Riano goes on to explain to Amanda Hicks that Ms. Robles has a right to press charges because an assault had occurred and that he could not deny Ms. Robles that right.

26. However, when Riano and Addington speak with Ms. Robles outside of the salon, they refuse to grant Ms. Robles her request to press charges against Amanda Hicks for the assault on her children that was caught on video. Even after watching the surveillance footage themselves, notifying Amanda Hicks that she had committed a crime, and hearing Ms. Robles' continued pleas to pursue her legal right to press charges, the officers continuously refused to arrest, or even write a report regarding Amanda Hicks' unlawful actions.

27. When Defendants refused to grant Ms. Robles' request to press charges and unlawfully arrested her, this created the inference that the arrest by Riano and Addington was motivated solely by her refusal to brush off the injustice of Defendants doing nothing to address Amanda Hicks' criminal behavior, and continued pleas to press charges, which was simply an expression of her First Amendment right to free speech when she complained that the officers were not doing their job by not arresting Amanda Hicks who committed an assault on minors.

28. Riano began to demand that Ms. Robles provide her identification and Ms. Robles explains that it is in her purse inside the salon. Ms. Robles then signals to the manager inside the salon to bring her purse to the door. He immediately understands the request and proceeds to grab her purse and brings it to the door.

29. At this point, Defendants inexplicably close the door on the manager's face as he tries to open the door to hand the purse over to Ms. Robles. Defendants refused to let the manager out of the salon with the purse and refused to let Ms. Robles go inside to retrieve the purse.

30. Despite knowing that Ms. Robles' identification was in her purse, Defendants purposefully and maliciously wouldn't allow Ms. Robles to grab her purse, yet they kept insisting that she provide her identification, knowing very well it would be impossible for her to comply with their request if they would not allow her access to the purse.

31. With so many alternatives available for Ms. Robles to get her purse, the officers deliberately chose to give her ZERO opportunity to get her identification as they requested. Either of the officers could have gone inside and brought the purse with the identification outside, could have requested the salon manager to bring the bag out, yet they gave her no opportunity to

comply with their request, knowing very well she could not provide the requested identification without someone, anyone, bringing her purse outside.

32. In fact, the surveillance footage shows the manager approaching the door with the purse and Defendants blocking his exit to hand the purse over.

33. After being denied access to her purse, Ms. Robles decides to walk back to her car to speak with her kids because she sees A.R. crying and H.R. frantically walking around. As soon as Ms. Robles begins to walk, simply walk, not run or make any erratic moves, Riano aggressively, and without necessity grabs Ms. Robles by her arm, restraining her movement immediately.

34. Ms. Robles' kids, who have historically suffered from domestic violence and abuse, began to panic. A.R., watching her mom being physically assaulted, and acting like any reasonable minor seeing their loved one in distress, tried to intervene and get Riano off her mom who was twisting and hurting Ms. Robles.

35. Without any reasonable fear of harm or belief that Ms. Robles would be attacking Riano or Addison, Riano pulls Ms. Robles away, grabs her by the neck, and slams her on the ground. Thereafter, Riano grabs Ms. Robles by the neck again and slams her head, face down on the concrete. Defendant Riano did not tell Ms. Robles that she was not free to leave nor did he tell her why she was being detained before throwing her head first on the concrete .

36. H.R. and A.R. seeing Riano grab and hit their mother, brought panic and fear to them immediately. A.R., in complete distress while watching her mother being physically assaulted by the Defendants, tried to intervene and help her mother, but was subdued by Addington and arrested.

37. Once Riano lifted Ms. Robles off of the ground, her shirt came off and her breasts were exposed to the entire staff, customers at the salon, witnesses in the plaza, and her two children who were watching helplessly and without understanding how a victim could be treated in such a manner. Plaintiff Ms. Robles, the victim in the matter, was humiliated and demeaned by this inexplicably disturbing treatment by the City employees.

38. H.R., who was already traumatized by the history of physical abuse he's watched his mother endure, was in so much fear watching his mother being physically assaulted by the Defendants, he began to run around the street and was nearly hit by other vehicles. H.R. was already suffering from mental disabilities and was now subjected to the traumatic experience of witnessing the very people who were called on to protect him, violently beat his mother.

39. Riano and Addington clearly failed to follow the training they had received to handle such situations as they were trained to use de-escalation procedures and adhere to department policy in responding to situations involving children. Ms. Robles informed Riano and Addington that she was in the custody of the County for the abuse the family suffered and asked that the social worker be called to care for her children. Defendants refused to call the social worker that was assigned to help the Robles family and refused to contact the city of Roseville's trauma-informed department for mental patients.

40. Officers Riano and Officer Addington saw that Ms. Robles was bleeding but did not offer any medical assistance or call for medical help for the Robles family. Further, the Defendants failed to interview all five (5) employees at the salon regarding the original assault by Amanda Hicks. The police report, prepared by Defendant Riano, lists Amanda Hicks as a

witness rather than the perpetrator who committed the assault on minors and the subject of the original 911 call.

41. Without any probable cause, and after being completely humiliated in front of her minor children, Ms. Robles was unlawfully arrested for resisting a peace officer and booked at South Placer County Jail. All because she called 911 for help, was unable to provide her identification due to the Defendants' refusal of allowing her any opportunity of obtaining it, and because she attempted to check on her children to ensure they were safe.

42. The attack on Ms. Robles caused her to have a concussion, bleeding toes, abrasion and contusion to her neck and torso, bruised ribs, wrist pain which inhibited her ability to type and work, a swollen face and jaw, the inability to swallow for days, extreme chest pains and bodily pain to her arms. Ms. Robles' left side of her face and jaw was swollen for many days following the attack. Ms. Robles could not swallow any liquids or solids for days.

43. Due to the brain and bodily injury, Ms. Robles now suffers chronic neurological issues, extreme chest pain, severe headaches, and has a traumatic brain injury. Ms. Robles suffers from severe nightmares, constant fear, difficulty sleeping, psychological and emotional distress, and anxiety as a result of the attack.

44. H.R. has suffered serious emotional distress as a result of witnessing such violent actions and injury to his mother and sister by the Defendants.

45. While at the police station, bleeding, injured, and under the Defendant's custody, Ms. Robles was denied access to the phone and her attorney for almost three (3) hours.

46. Additionally, and without cause, the officers employed by the City refused to release Ms. Robles and kept the bond company representative waiting in the lobby for multiple hours.

Ms. Robles, the victim of a crime, was treated as if she had committed unlawful acts and was unnecessarily and excessively held for over seven (7) hours before being released.

47. Plaintiffs have since moved out of the County of Placer due to the trauma, humiliation, and fear caused by the incident.

## COUNT I

**Fourth Amendment- Unreasonable Seizure—Arrest without Probable Cause**

48. Plaintiff incorporates by reference and re-alleges each and every preceding Paragraph of this Complaint as if fully set forth herein.

49. Officer Addington and Officer Riano lacked probable cause to arrest Ms. Robles on charges of resisting arrest.

50. The acts of Officer Addington and Officer Riano violated Ms. Robles' right to be free from an unreasonable seizure in violation of the Fourth Amendment, enforceable through 42 U.S.C. § 1983.

51. Plaintiff Ms. Robles seeks judgment against Defendant Addington and Defendant Riano for compensatory and punitive damages, plus attorney fees and costs.

## COUNT II

**Fourth Amendment- Unreasonable Seizure—Excessive Force**

52. Plaintiff incorporates by reference and re-alleges each and every preceding Paragraph of this Complaint as if fully set forth herein.

53. Officer Addington and Officer Riano used objectively unreasonable and excessive force in the detention and arrest of the Plaintiff Ms. Robles.

54. The acts of Officer Addington and Officer Riano violated Ms. Robles' right to be free from

an unreasonable seizure in violation of the Fourth Amendment, enforceable through 42 U.S.C. § 1983.

55. Defendants' above-described conduct violated Plaintiff Ms. Robles' right as provided for under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures because Defendants lacked the requisite probable cause to arrest Ms. Robles, as Plaintiff did not commit a crime.

56. Plaintiff Ms. Robles seeks judgment against Defendant Addington and Defendant Riano for compensatory and punitive damages, plus attorney fees and costs.

<div align="center">COUNT III</div>

<div align="center"><b>First Amendment-Freedom of Speech</b></div>

57. Plaintiff incorporates by reference and re-alleges each and every preceding Paragraph of this Complaint as if fully set forth herein.

58. Officer Addington and Officer Riano arrested Plaintiff Ms. Robles without probable cause because she exercised her First Amendment Right to Free Speech and refused to brush off the assault committed upon her minor children. Ms. Robles demanded the officers to do their duty and either arrest the true criminal, or at the very least investigate the matter further and write a full report stating the facts of what actually occurred.

59. The acts of Defendant Addington and Defendant Riano violated the Plaintiff's right to free expression in violation of the First Amendment, enforceable through 42 U.S.C. § 1983.

60. Wherefore, the Plaintiff, Ms. Robles, seeks judgment against Defendant Addington and Defendants Riano for compensatory and punitive damages, plus attorney fees and costs.

<div align="center">COUNT IV</div>

<div align="center"><b>Fourteenth Amendment—Failure to Intervene</b></div>

61. Plaintiff incorporates by reference and re-alleges each and every preceding Paragraph of this Complaint as if fully set forth herein.

62. Defendant Addington observed Defendant Riano detain and arrest Ms. Robles without reasonable suspicion or probable cause, and also observed Riano detain and arrest her using objectively unreasonable and excessive force, both in violation of the Plaintiff's right to be free of an unreasonable seizure under the Fourth Amendment.

63. Officer Addington failed to intervene and prevent Riano from violating Ms. Robles' Fourth Amendment right to be free of an unreasonable seizure, although Defendant Addington had a reasonable opportunity to do so.

64. The acts and omissions of Officer Addington violated the Plaintiff's rights under the due process clause of the Fourteenth Amendment, enforceable through 42 U.S.C. § 1983.

65.  Ms. Robles seeks judgment against Defendant Addington in compensatory and punitive damages, plus attorney fees and costs.

<u>COUNT V</u>

**Fourteenth Amendment—Deliberate Indifference to Serious Medical Need**

66. Plaintiffs incorporate by reference and re-allege each and every preceding Paragraph of this Complaint as if fully set forth herein.

67. Defendants were informed and observed that Plaintiff Ms. Robles suffered serious injuries. The Plaintiff was bleeding on her face and feet, suffered a concussion, and complained of pain in her body.

68. It would have been obvious to a lay person and was or should have been obvious to Sergeant Ciampa, and all Defendants, that the Plaintiff's injuries required prompt medical attention.

69. However, Defendants refused to have the Plaintiff transported to the Emergency Room, where she would have received medical treatment for her obvious serious injuries.

70. Defendants' acts or omissions were deliberately indifferent to the Plaintiff's serious medical needs, thereby depriving her of due process under the Fourteenth Amendment or constituted an unreasonable seizure under the Fourth Amendment, enforceable through 42 U.S.C. § 1983.

71. Plaintiff Ms. Robles seeks judgment against Defendants in compensatory and punitive damages, plus attorney fees and costs.

<div align="center">COUNT VI</div>

<div align="center">**Municipal Liability under 42 U.S.C. § 1983**</div>

72. Plaintiff incorporates by reference and re-alleges each and every preceding Paragraph of this Complaint as if fully set forth herein.

73. The City at all relevant times has maintained a policy, custom, or practice that has been the cause, the moving force, behind the violation of citizens' rights. Specifically, this policy, custom, or practice involves:

   a. The use of objectively unreasonable and excessive force on detainees and arrestees.

   b. Disorderly conduct arrests without probable cause, often only because the arrestee was protesting police conduct.

   c. Overcharging arrestees with resisting arrest and assault on a police officer when they were simply being uncooperative.

   d. The arrestees receiving serious injuries but the officers not being injured during such encounters.

e. Prosecutors declining to pursue such charges, demonstrating that the charges were meritless.

f. The City of Roseville Police Department not sustaining citizen complaints if it is the word of the complainant against a police officer and only sustaining a complaint if the citizen has corroboration from another person, if at all.

g. Employing and retaining as police officers and other personnel, including Defendants, individually and as peace officers; who at all times herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written City Police Department policies, including the use of excessive force, respect for the First Amendment of the United States Constitution, and refusing access to medical care.

h. Inadequately supervising, training, controlling, assigning, and disciplining City Police Officers, and other personnel, including Defendants, who the City knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity for violence and the use of excessive force and denying access to medical care.

i. By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants, who are police officers employed by the City.

j. By ratifying the intentional misconduct of Defendants and other officers, who are police officers employed by the City.

k. By having and maintaining an unconstitutional policy, custom and practice of

arresting individuals without probable cause or reasonable suspicion, and using excessive force, which also is demonstrated by inadequate training regarding these subjects. The policies, customs, and practices of Defendants were done with a deliberate indifference to individuals' safety and rights.

l.  By failing to properly investigate claims of unlawful seizures and excessive force by City Police Officers.

74. The above-described policy, custom, or practice was the direct, proximate cause of Defendants violating Plaintiff Ms. Robles' Fourth and Fourteenth Amendment rights, enforceable through 42 U.S.C. § 1983.

75. Ms. Robles seeks judgment against the City of Roseville in compensatory and punitive damages, plus attorney fees and costs.

76. Defendants' conduct, individually and as peace officers, was ratified by the City's Police Department supervisorial officers.

77. On and for some time prior to February 21, 2021 (and continuing to the present day), Defendants, individually and as peace officers, deprived Plaintiff of the rights and liberties secured to her by the First, Fourth, and Fourteenth Amendments to the United States Constitution, in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff, and of persons in Plaintiff's class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice.

78. Defendants, individually and as peace officers, together with various other officials,

whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated, and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiff and other individuals similarly situated.

79. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants, individually and as peace officers, acted with an intentional, reckless, and callous disregard for the rights of Plaintiff. Each of their actions was willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

80. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants, individually and as peace officers, were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiff.

81. The DOE Defendants who violated Plaintiff's constitutional rights acted because of the official policy and custom and engaged in said conspiracies for the purpose of depriving Plaintiff of her rights under the Constitutions of the United States and the State of California.

82. Defendant City at all times relevant to this complaint had knowledge of the customs and practices that led to the conspiracy to interfere with Plaintiff's civil rights and knowingly assisted in the perpetuation of the conspiracy.

83. As the direct and proximate result of these Defendants' actions, Plaintiff has suffered, and

will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiff has also incurred, and will continue to incur, attorneys' fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

84. On information and belief, Defendants and each of them acted with malice and with the intent to cause injury to Plaintiff or acted with a willful and conscious disregard of the rights of Plaintiff in a despicable, vile, and contemptible manner. Therefore, Plaintiff is entitled to an award of punitive damages for the purpose of punishing Defendants, and to deter them and others from such conduct in the future.

## COUNT VII

### Common Law—False Arrest

85. Plaintiff incorporates by reference and re-alleges each and every preceding Paragraph of this Complaint as if fully set forth herein.

86. Defendants detained and arrested Ms. Robles without reasonable suspicion or probable cause.

87. The aforesaid acts of Defendants were taken within the scope of their employment with the City.

88. The unlawful acts of the Defendants were the direct, proximate cause of Ms. Robles' injuries.

89. Defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with Plaintiffs' peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California,

in violation of California Civil Code §52.1.

90. As a direct and proximate result of Defendants' violation of Civil Code § 52.1, Plaintiff suffered violations of their constitutional rights, and suffered damages as set forth herein.

91. Plaintiff is entitled to injunctive relief and an award of her reasonable attorney's fees pursuant to Civil Code § 52.1(h).

92. Plaintiff is entitled to treble damages, but in no case less than $4,000.00 and an award of her reasonable attorney's fees pursuant to Civil Code § 52(a).

93. Under the provisions of California Civil Code §52(b), Defendants are liable for punitive damages for each violation of Civil Code §52.1, reasonable attorney's fees and an additional $25,000.00 penalty per violation.

94. The acts and omissions of Defendants as described above were carried out in a deliberate, cold, callous, intentional and/or unreasonable manner, causing injury and damage to Plaintiff as set forth above, and done with a conscious disregard of Plaintiff's rights and safety, Plaintiff request the assessment of punitive damages against these Defendants in an amount appropriate to punish or set an example of these Defendants.

95. Plaintiff Ms. Robles seeks judgment against Defendants for compensatory and punitive damages, plus attorney fees and costs.

<u>COUNT VIII</u>

**Assault and Battery**

96. Plaintiff incorporates by reference and re-alleges each and every preceding Paragraph of this Complaint as if fully set forth herein.

97. By their words and acts, Officer Addington and Riano threatened to do bodily harm to Plaintiff Ms. Robles.

98. By using excessive and unreasonable force, Officer Addington and Officer Riano caused harmful or offensive bodily contact with the Plaintiff.

99. The aforesaid acts were unprivileged.

100.    The aforesaid acts of Officer Addington and Officer Riano were taken within the scope of their employment by the City.

101.    The unlawful acts of Officer Addington and Officer Riano were the direct, proximate cause of the Plaintiff's injuries.

102.    Plaintiff was injured in their health, strength, vitality and activity, and sustained injuries to their body and mind by Defendants' assault and battery upon them. Plaintiff suffered further non-economic damages to be proven at the time of trial.

103.    Defendants' conduct caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation, and further damages according to proof at the time of trial.

104.    The conduct alleged herein was done in willful, malicious, intentional, deliberate, or reckless disregard of Plaintiff's constitutionally protected rights, welfare, and safety.

105.    Plaintiff Ms. Robles seeks judgment against Officer Addington and Officer Riano and the City of Roseville for compensatory and punitive damages, plus attorney fees and costs.

<div align="center">COUNT IX</div>

**<div align="center">Intentional Infliction of Emotional Distress</div>**

106.    Plaintiffs incorporate by reference and re-allege each and every preceding Paragraph of this Complaint as if fully set forth herein.

107.    The conduct of Defendants was extreme and outrageous and was intended to cause and did cause the Plaintiffs severe emotional distress.

108.    The acts and omissions of Defendants were taken within the scope of their employment with the City.

109.    The Defendants' actions as set forth herein occurred during the course and scope of their employment for the City and were both intentional and malicious. The conduct of Defendants, and each of them was willful, wanton, oppressive, fraudulent, despicable, threatening, evil, intimidating and beyond that which should be tolerated by a civilized society. The acts of these Defendants were carried out with a conscious disregard of the likelihood of causing injury, suffering, or distress to Plaintiffs, and involved reckless and callous indifference to the state and federally protected rights of others. Therefore punitive damages in a sum according to proof and in a sum sufficient to deter similar such conduct in the future is also sought against all individual and non-municipal Defendants.

110.    Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff H.R. was present when the conduct occurred.

111.    As a legal result of such intentional misconduct exhibited by Defendants, Plaintiff sustained injuries and damages in a sum to be ascertained according to proof. As a further legal result of Defendants' intentional misconduct, Plaintiff suffered and continues to suffer severe anxiety, worry, fear, humiliation, emotional distress, and mental anguish, all resulting in damages in a sum to be ascertained according to proof.

112.    As a further legal result of such misconduct, Plaintiff incurred expenses for medicines, medical treatment, therapy, and/or other related expenses, attorneys' fees, litigation costs and other general and special damages in a sum to be ascertained according to proof.

113.    As a further legal result of Defendants' intentional misconduct, Plaintiff suffered

incidental and consequential damages in an amount according to proof.

114. Because the acts and omissions of Defendants were carried out in a deliberate, cold, callous, intentional and/or unreasonable manner, causing injury and damage to Plaintiff as set forth above, and done with a conscious disregard of Plaintiffs rights and safety, Plaintiff requests the assessment of punitive damages against said Defendants, in an amount appropriate to punish or set an example of said Defendants.

<div align="center">COUNT X</div>

<div align="center"><strong>Common Law – Malicious Prosecution</strong></div>

115. Plaintiff incorporates by reference and re-alleges each and every preceding Paragraph of this Complaint as if fully set forth herein.

116. Defendants initiated charges of resisting arrest of a police officer against Plaintiff Ms. Robles with malice and without probable cause.

117. Those charges were dismissed in Plaintiff Ms. Robles' favor.

118. The acts of Defendants were taken within the scope of their employment with the City of Roseville.

119. Plaintiff Ms. Robles seeks judgment against Officer Addington, Officer Riano, Sergeant Ciampa, and the City of Roseville for compensatory and punitive damages, plus attorney fees and costs.

<div align="center">COUNT XI</div>

<div align="center"><strong>Common Law—Negligence</strong></div>

120. Plaintiff incorporates by reference and re-alleges each and every preceding Paragraph of this Complaint as if fully set forth herein.

121. The present action is brought pursuant to section 820 and 815.2 of the California

Government Code. Pursuant to section 820 of the California Government Code, all named defendants and DOES 1-20, as public employees, are liable for injuries caused by their acts or omissions to the same extent as a private person. At all times mentioned herein, all named Defendants and Defendants DOES 1-20 were acting within the course and scope of their employment and/or agency with Defendant City. As such Defendant City is liable in respondeat superior for the injuries caused by the acts and omissions of all named Defendants and Defendants DOES 1-25, pursuant to section 815.2 of the California Government Code.

122.    Defendants acted negligently in their use of force against Plaintiff and in their conduct committed against Plaintiff.

123.    Plaintiffs were harmed and Defendants' negligence was a substantial factor in causing their harm.

124.    Defendants' conduct caused Plaintiff to suffer physical injury, emotional distress, pain and suffering, loss of income, medical expenses, fear, trauma, and humiliation.

125.    As a direct and proximate result of the foregoing, Plaintiff has suffered, and continues to suffer, mental and emotional distress and is entitled to and demands damages against Defendants jointly and severally, including, but not limited to, economic and general damages, in amounts to be proven at trial.

126.    Plaintiff Ms. Robles seeks judgment against Officer Addington, Officer Riano, Sergeant Ciampa, and the City of Roseville for compensatory and punitive damages.

<u>COUNT XII</u>

**Common Law—Negligent Hiring, Training, Retention and Supervision**

127.    Plaintiff incorporates by reference and re-alleges each and every preceding Paragraph of

this Complaint as if fully set forth herein.

128. Upon information and belief, Plaintiff Ms. Robles alleges that Defendant City was negligent in the selection of hiring, training, evaluating, retention, discipline, management, control, review, and supervision of their employees and co-defendants thereby legally causing the serious injuries.

129. On February 21, 2021, the Defendant City of Roseville and the Roseville Police Department as supervisors of the Defendant DOE Officers, knew or in the exercise of due care should have known, that Officer Addington, Officer Riano, Sergeant Ciampa and the individually named DOE Defendants herein, and each of them, had a propensity, character trait, and practice, while purporting to act under color of law, violence, and/or dishonesty and/or prevarication.

130. At all times mentioned herein, Defendant City of Roseville and Roseville Police Department, knew or in the exercise of due care should have known, that the afore described traits of character, practices and propensities of Defendants' Officers and Sergeants, and each of them, made them unfit to serve as peace officers and were likely to cause harm and injury to members of the public, including Plaintiff.

131. Notwithstanding such knowledge, Defendant City of Roseville and Roseville Police Department negligently, carelessly and recklessly, hired, employed, retained and failed to properly supervise, train and control the Defendant DOE Officers, and each of them, inclusive, as peace officers and assigned said Defendant DOE Officers, to duties which enabled each of them to violate the law and City of Roseville Police Department's written policies, including but not limited to, using lethal force without cause, committing police

brutality, making illegal arrests, fabricating probable cause, maliciously prosecuting innocent persons, using excessive force and covering up repeated acts of police misconduct and crimes, all while purporting to act under the color of law.

132.    As a direct and proximate result of the foregoing, Plaintiff has been damaged as recited above and demands and is entitled to the damages recited herein, including, but not limited to economic and noneconomic general damages in amounts to be proven at trial.

133.    The aforementioned acts and omissions on the parts of Defendants, and each of them, were the proximate cause of Plaintiff's injuries.

134.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered substantial injuries, pain and suffering, loss of enjoyment of life, and other noneconomic damages in a sum to be proven at the time of trial.

135.    As a further direct and proximate result of Defendants' negligence, Plaintiff was compelled to and did suffer economic damages, incur expenses for medical care. and will have to incur like expenses in the future, all in amounts presently unknown to her.  Plaintiff will either seek leave to amend this complaint once such amounts are known, or will prove said amounts at the time of trial.

136.     As a further direct and proximate result of Defendants' negligence, Plaintiff suffered wage loss and earning capacity, all in amounts presently unknown to him.  Plaintiff will either seek leave to amend this complaint once such amounts are known, or will prove said amounts at the time of trial.

137.    Plaintiff Ms. Robles seeks judgment against Officer Addington, Officer Riano, Sergeant Ciampa, and the City of Roseville for compensatory and punitive damages.

<u>COUNT XIII</u>

**Negligent Infliction of Emotional Distress--Bystander**

138.    Plaintiffs reallege and incorporate by reference herein each and every allegation contained herein above as though fully set forth and brought in this cause of action.

139.    Minor Plaintiff H.R. suffered serious emotional distress as a result of perceiving the injury to a close relative, his mother, Ms. Robles.

140.    Defendants' negligent conduct caused injury to Ms. Robles when she was physically assaulted and slammed head first on the concrete floor.

141.    Minor Plaintiff H.R. was present in the zone of danger when Defendants physically assaulted his mother and was aware and in fear as he saw Defendants causing injury to his mother.

142.     As a result of Defendant's negligence, Plaintiff H.R. suffered severe emotional distress beyond that which would be anticipated in a disinterested witness.

143.     Defendants' conduct was a substantial factor in causing Plaintiff's serious emotional distress.

144.    Plaintiff H.R., by and through his Guardian ad Litem, seeks economic and noneconomic damages against Officer Addington, Officer Riano, and Sergeant Ciampa.

**<u>JURY DEMAND</u>**

The Plaintiffs demand a trial by jury on all issues so triable.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.  For general damages in a sum according to proof;

2.  For special damages in a sum according to proof;

3. For punitive damages in a sum according to proof;

4. For reasonable attorneys fees pursuant to 42 U.S.C. Section 1983 and Civil Code Section 52.1;

5. Civil penalties as allowed by law;

6. For declaratory relief under 42 U.S.C. Section 1983;

7. For costs of suit herein incurred; and

8. Any other relief or damages allowed by law, or statutes not set out above, and such further relief as this Court deems just and proper at the conclusion of trial.

Dated: January 14, 2022                                    **ALEMI LAW**

_____
By: Samander Alemi, Esq.
Attorneys for Plaintiffs