# EXHIBIT B

1  Bruce M. Brusavich, SBN 93578
   brusavich@agnewbrusavich.com
2  AGNEWBRUSAVICH
   20355 Hawthorne Boulevard
3  Second Floor
   Torrance, California  90503
4  Telephone: (310) 793-1400
   Fax: (310) 793-1499
5
   Attorneys for Plaintiffs
6  ELVIRA GUEVARA, RUDY GUEVARA ,
   S.G. and M.G.
7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10
   J.G., a minor, individually and as )   CASE NO. 5:18-CV-02386 RGK (SPx)
11 successor-in-interest to decedent, Mario )
   Guevara, by and through her Guardian )    [Hon. Patrick J. Walsh, Magistrate
12 ad Litem, SUSIE CASTRO; ELVIRA )          Judge]
   GUEVARA, individually; RUDY GUEVARA, )
13 individually;  ANABEL  GONZALEZ, )        PLAINTIFFS' EX PARTE APPLICATION
   individually; S.G., a minor, individually, )  FOR APPROVAL OF COMPROMISE
14 by and through her Guardian ad Litem )    OF  THE  CLAIMS  OF  THE  MINOR
   ANABEL GONZALEZ; M.G., a minor )          PLAINTIFFS  M.G.  AND  S.G.;
15 individually,  by  and  through  her )     VERIFICATION  BY  GUARDIAN  AD
   Guardian ad Liem ANABEL GONZALEZ; )       LITEM;  AND  ACCOMPANYING
16 YASMIN ORTEGA, individually; and CHITO )  DECLARATION   OF   PLAINTIFFS'
   ORTEGA, individually;                 )   COUNSEL, BRUCE M. BRUSAVICH
17
                     Plaintiffs, )          [Declaration of Bruce M. Brusavich
18 vs.                            )          and Anabel Gonzalez; Proposed
                                  )          Order filed concurrently herewith]
19 CITY  OF  COLTON;  and  DOES  1-10, )
   inclusive,                       )
20                   Defendants. )           FAC Filed:              02/14/19
                                  )          Discovery Cutoff:       11/19/19
21 _____ )        Motion Cutoff:          12/03/19
                                            Trial Date:             02/18/20
22

23

24

25 TO THIS HONORABLE COURT AND ALL THE PARTIES AND THEIR COUNSEL OF RECORD:

26     PLEASE TAKE NOTICE Plaintiffs S.G. and M.G. ("Minor Plaintiffs"), by and

27 through their guardian *ad litem* Anabel Gonzalez, hereby move by way of this Ex

28
                                        1
   **PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE
   OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY
   GUARDIAN AD LITEM**

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD · TORRANCE, CA 90503
T: (310) 793-1400    F: (310) 793-1499

1  Parte Application to Compromise the Claims of Minor Plaintiffs for an order

2  approving the settlement of Minor Plaintiffs' claims and distribution of their

3  settlement funds.

4      Plaintiffs make this application pursuant to Central District Local Rule 7-19.

5  The grounds for this application are set forth in the Memorandum of Points and

6  Authorities, which follows below, and the Declaration of Bruce M. Brusavich,

7  which is submitted concurrently herewith.  Prior to filing this ex parte application,

8  Minor Plaintiffs' counsel contacted Defendants City of Colton and Michael

9  Sandoval's counsel in compliance with Local Rule 19 through 7-19.1.

10  Defendants' counsel is:

11             Eugene P. Ramirez (epr@manningllp.com)
           Tony M. Sain (tms@manningllp.com)

12             Lynn Carpenter (llc@manningllp.com)
           MANNING & KASS

13             ELLROD, RAMIREZ, TRESTER LLP
           801 S. Figueroa Street, 15th Floor

14             Los Angeles, CA 90017-3012
           Telephone:  (213) 624-6900

15             Facsimile: (213) 624-6999

16

17  As Defendants' counsel conveyed to Plaintiffs' counsel, Defendant and its counsel

18  do not oppose the filing of this application for approval of the minors' compromise

19  on an ex parte basis, provided the Order approving the compromise is consistent

20  with the settlement reached in this matter at the Mandatory Settlement Conference.

21      On February 27, 2020, plaintiffs have served copies of this *Ex Parte* Application

22  and Proposed Order on defense counsel Tony Sain at tms@manningllp.com and

23  Lynn Carpenter at llc@manningllp.com.

24      Plaintiffs seek approval of Minor Plaintiffs S.G. and M.G.'s compromises on an

25  *ex parte* basis because their guardian, after consulting with an annuity broker, has

26  chosen an annuity for which the interest rate may expire if this petition is heard as

27  a regularly-noticed motion. Brusavich Decl. ¶ 21.  Filing this application for approval

28

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD . TORRANCE, CA 90503
T: (310) 793-1400    F: (310) 793-1499

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

1    of Minor Plaintiffs S.G. and M.G.'s claims as a regularly-noticed motion may a

2    decrease in payment benefits to Minor Plaintiffs S.G. and M.G. *Id.* Accordingly,

3    Plaintiffs respectfully request that this Court consider Minor Plaintiffs' application for

4    approval of the compromises of Minor Plaintiffs S.G. and M.G.'s claims on an

5    *ex parte* basis.

6                                          Respectfully submitted,

7    DATED:   February 27, 2020            AGNEWBRUSAVICH

8                                         A Professional Corporation

9

10                 By: _____

11                            BRUCE M. BRUSAVICH

                                      Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD · TORRANCE, CA 90503
T: (310) 793-1400      F: (310) 793-1499

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Anabel Gonzalez, the mother and guardian *ad litem* for the minor plaintiffs, M.G. and S.G., hereby submits this *ex parte* application and proposed order for approval of the compromises of claims of minor plaintiffs, M.G. and S.G. in this matter, and request that this Honorable Court approve the proposed distribution of the gross settlement funds in the amount of $575,000 and the allocation to the various plaintiffs, including minors M.G. and S.G., which are the subject matter of these papers.

The instant claims of minors M.G. and S.G. arose from their witnessing Colton Police Department shoot and kill their Uncle Mario Guevara on December 2, 2017 right in front of their home.  Their status as rightful plaintiffs in this matter was established after the Court denied the defendants' motion for judgment on the pleadings as to S.G. and M.G. claiming their status as nieces was too tenuous.

The settlement agreement obligates the defendants to pay all plaintiffs $575,000. Pursuant to the recommendation of the mediator Rick Copeland and the consent of the parties, 60% of the gross settlement proceeds are being allocated to the decedent's daughter, J.G., and the balance of the 40% of the proceeds are being allocated to the four family members with claims for intentional infliction of emotional distress.  Of that 40%, it is suggested that $61,525 be allocated to the decedent's mother, Elvira Guevara, and that the same amount be allocated to the decedent's brother, Rudy Guevara.  It is proposed that the remaining funds be allocated between S.G. and M.G. for a total of $53,475 each.

## II.   DISCUSSION

District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors.  Here, the

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD · TORRANCE, CA 90503
T: (310) 793-1400    F: (310) 793-1499

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

Court was requested to conduct a Mandatory Settlement Conference of this matter and is therefore familiar with the facts and circumstances giving rise to the claim.

Petitioner submits that the proposed settlement and the requested allocation comports with Rule 17(c), as well as California Code of Civil Procedure, section 372 and California Rules of Court 3.1384, 7.950, 7.951 and 7.952. The guardian and petitioner, Anabel Gonzalez, was dismissed from this matter with prejudice and is not receiving any of the settlement funds.

Medical billings or treatment are not relevant in this matter. The minors received some counseling at school and the parents were not billed for any of the counseling that the girls received.

As more fully set forth in the attached Declaration of Bruce M. Brusavich, the retention agreement would entitle the AgnewBrusavich firm to receive 40% of the fees collected in this matter. However, in order to facilitate the division of the gross settlement proceeds in the amount of 60% to J.G. and 40% to the balance of the family, and to assist in making the settlement happen, plaintiffs' counsel, Bruce M. Brusavich, has agreed to reduce his fee to 1/3 of the recovery. This in no way implies that the Galipo firm should compromise the attorney's fees they are entitled to receive.

Plaintiffs' counsel is also requesting a pro-rata reimbursement of the litigation expenses they have advanced in the amount of $4,040.88 from each minor, leaving a net recovery to each minor in the amount of $31,609.12. This entire sum will be utilized for each child to fund an annuity, as more fully set forth in the Declaration of Bruce M. Brusavich.

**Disclosures pursuant to California Rule of Court 7.951:**

1.      This application was prepared by attorney Bruce M. Brusavich of the law offices of **AGNEW**BRUSAVICH, located at 20355 Hawthorne Boulevard, 2nd Floor, Torrance, CA 90503.

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD · TORRANCE, CA 90503
T: (310) 793-1400   F: (310) 793-1499

2.      The law offices of **AGNEW**BRUSAVICH did not become concerned with this matter at the instance of any party against whom the claim of said minors are asserted. The law offices of **AGNEW**BRUSAVICH have not to date received any compensation for their services in connection with this matter from any person.

3.      The law offices of **AGNEW**BRUSAVICH have not received any compensation from any other source in connection with their representation of plaintiffs in this matter.

Petitioner's endorsement:

Petitioner Anabel Gonzalez was present all day at the mediation of this matter with Rick Copeland on December 18, 2019. Petitioner Anabel Gonzalez was also present at the Mandatory Settlement Conference with this Court. She has made a careful and diligent inquiry and investigation to ascertain the facts relating to the incident giving rise to her daughters' claims. Petitioner further understands that if the compromise proposed in this *ex parte* application is approved by the Court and is consummated, the minor children will be forever barred from seeking any further recovery of compensation. Petitioner recommends the compromise settlement and the proposed distribution to the minors to the Court as being fair, reasonable, and in the best interest of the minors, and requests that the Court approve this compromise settlement and make such other and further orders as may be just and reasonable. Petitioner Anabel Gonzalez requests that the Court issue the order approving the settlement as requested by her children's counsel.

///

///

///

///

///

///

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD · TORRANCE, CA 90503
T: (310) 793-1400    F: (310) 793-1499

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed order submitted.

Respectfully submitted,

DATED:   February 25, 2020          **AGNEW**BRUSAVICH
A Professional Corporation

By: _____
BRUCE M. BRUSAVICH
Attorneys for Plaintiffs

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD · TORRANCE, CA 90503
T: (310) 793-1400    F: (310) 793-1499

7

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

1

## **VERIFICATION**

2

3     I, ANABEL GONZALEZ, guardian *ad litem* and natural mother of minor

4     plaintiffs, S.G. and M.G., hereby declare under penalty of perjury and pursuant

5     to the laws of the United States and I have reviewed the petition for compromise

6     of the claims of S.G. and M.G., and the foregoing is true and correct.

7     Executed this ___25___ day of February, 2020, at Colton, California.

8

9                                        ANABEL GONZALEZ

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD · TORRANCE, CA 90503
T: (310) 793-1400   F: (310) 793-1499

## DECLARATION OF BRUCE M. BRUSAVICH

I, BRUCE M. BRUSAVICH, declare and say that:

1.     I am an attorney duly licensed to practice before all the Courts of the State of California and am a principal in the law firm of AgnewBrusavich, A Professional Corporation.  The following facts are based upon my personal knowledge and if called as a witness, I could and would competently testify thereto.  This declaration is submitted in connection with a Petition for the Approval of a Minor Compromise as to minor plaintiffs, M.G. and S.G. for the settlement of the *Guevara, et al. v. City of Colton, et al.*, U.S. District Court Case No. 5:18-CV-02386 RGK (Spx) personal injury lawsuit as required by Local Rule 17-1, California Code of Civil Procedure 372 and California Rules of Court, Rule 7.955(c) and shall address the relevant considerations set forth in Rule 7.955(b).

### MY QUALIFICATIONS AND EXPERIENCE
### (Cal. Rule of Court Rule 7.955(b)(7))

2.     I have been a trial lawyer since 1980 specializing in the representation of injured people.  My practice concentrates on significant injury, wrongful death, product liability and medical malpractice claims.  I have lectured at Continuing Legal Education programs on many topics including trial practice and wrongful death claims.  I am a member and past president of the Consumer Attorneys Association of Los Angeles and Consumer Attorneys of California.  I am a member of the American Board of Trial Advocates (ABOTA), the International Academy of Trial Lawyers, Public Justice (formerly Trial Lawyers for Public Justice), the American Association for Justice (formerly the Association of Trial Lawyers of America), and numerous other bar organizations.

3.     My abilities and skills as a trial lawyer representing consumers have resulted in numerous awards, recognition and accolades.  My firm has been rated "AV-Preeminent" by Martindale-Hubbell, a registration reserved for the top

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

2% of the legal profession. I have been named among the "Best Lawyers in America" for a number of years, as well as a "Southern California Super Lawyer," among the "Best Plaintiff Lawyers in America" by <u>Law Dragon</u>, a "Best Lawyer" by U.S. News and World Report and "Top 100 Trial Lawyers" by the National Trial Lawyers Association. I have been profiled on the front page twice by the <u>Daily Journal</u> which has named me among the "100 Most Influential Attorneys in the State of California". The <u>Los Angeles Business Journal</u> has named me among the "Top 50 Lawyers in L.A. Who Stand Out." I have been named "Trial Lawyer of the Year" and I have received numerous other awards and commendations for my trial skills and service to the legal profession.

4.     My firm usually agrees to advance litigation expenses on behalf of our clients which, pursuant to the Internal Revenue Service, cannot be deducted as business expenses. This means we have to take our income, pay significant taxes on that income and then invest the after-tax dollars into our client's cases, with no guarantee that we will be successful in the matter and recoup those costs. Some cases are lost and some cases result in a lower than anticipated recovery. These losses are taken into account in the very nature of the contingency practice, much like insurance companies who spread losses and income.

5.     My partner and I also maintain a small practice which necessarily limits the cases we can accept. When we decide to undertake the representation of one client, it necessarily means we will be declining other employment opportunities. (Rule of Court, Rule 7.955(b)(11).

<u>RETENTION OF MY FIRM</u>

6.     Shortly after the shooting death of Mario Guevara on December 2, 2017 by City of Colton police officer Michael Sandoval, based upon a referral by a close family friend of the Guervaras who was familiar with my practice, the

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD . TORRANCE, CA 90503
T: (310) 793-1400     F: (310) 793-1499

Guevara family sought my representation over the death of their son, brother, uncle and father.

7.      I met with the Guevara family on December 27, 2017 after I collected press reports and news footage of the shooting.  I learned of Mario's mental health history and how the Colton Police Department had been called by the family on numerous prior occasions to assist them in placing Mario to a psychiatric confinement pursuant to Welfare & Institutions Code section 5150. The family did not have funds to pay a lawyer at an hourly rate or to advance litigation costs so I agreed to undertake the representation of the family on a contingency basis.  A copy of the retainer agreement signed by the family is attached hereto as Exhibit 1.

8.      I caused to be filed with the Court an application to appoint Anabel Gonzalez, the mother of M.G. and S.G. their Guardian *Ad Litem* in September of 2018.  See attached Exhibit 2.

9.      Later, I was contacted by the mother of Mario Guevara's daughter, J. G., one Susie Castro, who signed a retainer agreement on June 20, 2018.  A copy of this retention agreement is attached as Exhibit 3.

10.     As I became more familiar with the Guevara family dynamics and their relationship with Susie Castro, who had moved out of the Guevara home with her daughter J.G. to Texas sometime before the shooting death of Mario, I believed that a potential conflict of interest existed with my representation of all of the plaintiffs and I believed it would be in the best interests of the plaintiffs if J. G. had separate counsel.

11.     I became familiar with Dale Galipo several years ago when, as a past recipient of the Consumer Attorneys Association of Los Angeles Trial Lawyer of the Year, I was placed on a committee to suggest finalists for the organization's Trial Lawyer of the Year award.  I was impressed with the number

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355  HAWTHORNE  BLVD  ·  TORRANCE,  CA  90503
T: (310) 793-1400     F: (310) 793-1499

11

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

of successful verdicts Dale Galipo had obtained in police excessive force cases and I nominated him for the Trial Lawyer of the Year award. Thereafter, I associated Mr. Galipo in on a police excessive force/wrongful death case of an 18-year old which we worked up together and began trial last year. It was therefore my suggestion that J.G. be represented in this matter by Law Offices of Dale Galipo and that I would continue to represent the balance of the Guevara family.

12. As to the remaining plaintiffs, in April of 2019, I obtained signed waivers for any conflict of interest in connection with my representation of the remaining plaintiffs and consent that we would utilize the mediator to assist in determing the allocation of any settlement monies among all plaintiffs.

<u>SUMMARY OF THE INCIDENT</u>

13. This was a very difficult case and the bodycam video of Officer Sandoval was not available at the time of retention or filing of the case. Eventually during litigation the bodycam video was produced which remarkably invokes varying reactions depending on who I had view the video. Most individuals thought that the shooting was unjustified, premature, and inappropriate given the fact that Officer Sandoval knew he was responding to a mentally ill individual. Others, like our trial judge, The Honorable Gary Klausner, believed Mario was advancing on Officer Sandoval and that Officer Sandoval was reasonably reacting to his fear in discharging his service handgun four times.

14. Numerous depositions were taken in this matter and the case was completely worked up for a trial that was to commence on February 18, 2020. The matter also was fully briefed for a summary judgment motion by the defendant on all claims, resulting in the granting of the motion with respect to the Federal civil rights claims. Judge Klausner however denied the motion as to the California wrongful death and negligent infliction of emotional distress claims

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD · TORRANCE, CA 90503
T: (310) 793-1400   F: (310) 793-1499

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD . TORRANCE, CA 90503
T: (310) 793-1400   F: (310) 793-1499

and those matters were to be tried.  Prior to trial, by stipulation, the claims of Anabel Gonzalez and her children who were not related to Mario Guevara, Yasmin Ortega and Chito Ortega, were dismissed.

15.    The parties attended a mediation in this matter before Rick Copeland on December 18, 2019.  Mr. Copeland was the mediator which the defendant insisted on utilizing which was acceptable to myself and Mr. Galipo since we had both had prior experiences with Mr. Copeland.  At a point where it appeared as though resolution of the claim may be possible, Mr. Galipo and myself had a conversation with Mr. Copeland concerning the allocation of any settlement funds between the various plaintiffs.  A consensus was reached that in the event of a settlement, 60% of the funds should be allocated to J.G. who lost her father and had a wrongful death claim, and the balance of the funds should be allocated to the four members of the Guevara family who had valid and viable negligent infliction of emotional distress claims.

16.    The evidence that was gathered in this matter, including transcripts of the 911 calls, reflected that Officer Sandoval arrived on scene as Rudy Guevara was still on the phone with the 911 dispatcher at Colton Police Department.  Rudy got off the call and ran outside with his mother, his common law wife Anabel Gonzalez, and her son, Chito Ortega.  The children, S.G. and M.G., were told to stay in the house with their older stepsister Yasmin Ortega and they all went up to the master bedroom suite which had a window that overlooked the scene with the Colton police officer and Mario.  A few seconds after the shooting, Yasmin Ortega took several photographs with her cell phone of the scene.  One of the photographs is depicted in Exhibit 4.  This photograph shows Rudy Guevara, who was standing on the passenger side of Officer Sandoval's police car, was probably 10 feet away from his brother Mario when he was shot.  Elvira, the mother of Mario Guevara, is partially shown in the lower

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

1   right-hand corner of the photograph.  She is probably 35 feet away from her son

2   when he was shot and killed.  M.G. and S..G. were in the second story master

3   bedroom of the house which was approximately 50 yards from the shooting of

4   their uncle.

5       17.   This matter settled after a Mandatory Settlement Conference with

6   Magisrate Judge Patrick J. Walsh on February 6, 2020, subject to approval by the

7   Colton City Council which was obtained on February 18, 2020.

8       18.   All plaintiffs propose that the $575,000 settlement be split between

9   J.G. and the rest of the plaintiffs, with 60% being allocated to J.G. and 40% being

10  allocated to the balance of the plaintiffs.  With respect to the remaining 40%, it is

11  suggested that $61,525 be allocated to Rudy Guevara and $61,525 be allocated

12  to Elvira Guevara.  It is proposed that the remaining funds be allocated between

13  S.G. and M.G. of $53,475 each.  The reason for the slight differential in the

14  allocation is because Elvira Guevara was standing nearby when her son of 37

15  years was shot and killed.  Rudy Guevara, who had called the Colton Police

16  Department seeking assistance as he had done before to commit his brother to a

17  psychiatric hospital, was some 10 feet from his brother when the very police he

18  called to help, shot and killed his brother, despite his pleas that they not shoot

19  him, but rather Tase him.  S.G. and M.G. had not known their uncle as long as

20  their father or grandmother and were more distant from the incident and inside

21  the house.

22      19.   Although my retention agreement would entitle me to seek a fee of

23  40% of the recovery, in order to help facilitate a settlement of this matter, I

24  agreed to only seek a 1/3 fee.  The family was not happy with 60% of the gross

25  recovery going to J.G. so my offer to reduce my fee helped the family agree to

26  settle.  Based upon the complexity of this matter, the amount of time and effort

27  that has gone into prosecuting this matter, due to the challenging nature of the

28

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD . TORRANCE, CA 90503
T: (310) 793-1400   F: (310) 793-1499

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

1   matter and the fact that experts had to be retained and deposed and then a

2   summary judgment motion was fully litigated and heard, I believe a 1/3 fee is

3   completely appropriate and justified pursuant to California Rules of Court, 7.955.

4        20.    My firm's share of the litigation expenses advanced in this matter

5   total $17,380.17. See Exhibit 5. I have applied a pro-rata share of the costs

6   based upon the settlement, with Elvira and Rudy being responsible for 26.75% of

7   the costs or $4,649.19 each and that each of the minors bearing responsibility for

8   23.25%, or $4,040.88 each.

9        21.    After deducting fees of 1/3 from the $53,475 allocation, or $17,825 in

10   attorney's fees per minor, and substracting each minor's share of the costs

11   advanced of $4,040.88, each minor is left with a net recovery of $31,609.12. The

12   girls' mother and guardian ad litem, Anabel Gonzalez, in consultation with her

13   common-law husband, Rudy Guevara, have decided that these net proceeds

14   should be utilized to purchase an annuity with a financially sound life annuity

15   company, Pacific Life Insurance Company. These annuities will pay the

16   following:

17      M.G.

18          $6,275.00 payable annually guaranteed for four years only,

19          commencing on 8/29/2024 with the last payment on 8/29/2027; and

20          $11,330.00 lump sum payment on 8/29/2031.

21

22      S.G.

23          $6,115.00 payable annually guaranteed for four years only,

24          commencing on 1/24/2023 with the last payment on 1/24/2026; and

25          $10,100.00 lump sum payment on 1/24/2030.

26   A copy of the guaranteed payout is attached hereto as Exhibit 6. A copy of the

27   Qualified Assignment Agreement that the City of Colton must sign to effectuate

28

**PLAINTIFFS' UNOPPOSED EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM**

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD. · TORRANCE, CA 90503
T: (310) 793-1400     F: (310) 793-1499

1  the transfer of the obligation to make these payments is attached hereto as

2  Exhibit 7.  The annuity quotes are time sensitive giving rise to this *ex parte* request

3  for approval.

4      22.    The defendants have advised plaintiffs' counsel that they will not

5  oppose this *ex parte* as long as the relief granted is consistent with the terms of

6  the settlement reached in the matter and clarified during a telephone

7  conference with Magistrate Judge Walsh.

8      23.    I therefore request that the Court approve the minors' compromise

9  as submitted and sign the Order Approving the Minors' Compromise.

10      I declare under penalty of perjury under the laws of the State of California

11  and the United States of America that the foregoing is true and correct to the

12  best of my knowledge.

13      Executed this 27th day of February, 2020, at Torrance, California.

14

15

16                 BRUCE M. BRUSAVICH, Declarant

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355  HAWTHORNE  BLVD.  ·  TORRANCE,  CA  90503
T: (310) 793-1400      F: (310) 793-1499

16

EXHIBIT 1

# AGNEW BRUSAVICH
## SERIOUS INJURY LAWYERS

Gerald E. Agnew, Jr.
Bruce M. Brusavich
Stephen C. Rasak
Terry S. Schneier
Alexander B. Boris

Robert N. Stone
*Of Counsel*

Daniel V. Favero
*Administrator*

Kevin P. Culpepper
*Paralegal*

## ATTORNEY RETAINER AGREEMENT

I hereby retain **AGNEWBRUSAVICH**, A Professional Corporation, as my attorneys to prosecute a claim against the persons and entities who may be liable for injuries and damages arising out of an incident that occurred on or about___December 2, 2017___, in the City of ___Colton___, County of ___San Bernardino___, State of California.

I authorize my attorneys to take all action deemed by them to be advisable in representing my interests in this matter. I also authorize my attorneys to employ and/or retain whatever personnel they, in their discretion, decide are reasonable and necessary in representing my interests, and I further authorize them to expend whatever sums they, in their discretion, deem advisable in representing my interests in this matter.

After discussion with my attorneys, I elect not to retain my attorneys on an hourly basis and instead, want to retain them on a contingency fee basis. I also elect not to provide a retainer to cover litigation expenses or to pay expenses as they are incurred and request and authorize my attorneys to advance litigation expenses on my behalf.

I understand that the fees paid to my attorneys are not set by law, but are negotiated between us. After discussion with my attorneys, I agree to pay my attorneys fees of thirty-three and one-third percent (33-1/3%) of any recovery in the event that settlement is reached before a lawsuit is filed or arbitration is demanded, at which time the matter proceeds to litigation. Thereafter I agree to pay my attorneys fees of forty percent (40%) of any recovery whether by settlement, judgment or award ~~if the case settles within sixty (60) days of the first trial date. If the matter resolves by way of settlement or trial, after sixty (60) days before~~ the first trial date, ~~attorneys' fees shall be forty-five percent (45%) of the amount recovered.~~

I agree that my attorneys may associate other counsel to jointly prosecute this claim. It is understood that the attorneys' fees payable by client shall not increase and that the attorneys must share the fees provided for in this agreement.

I agree and understand that money spent and expenses incurred by my attorneys in representing my interests will be chargeable to me as expenses and will be deducted from any settlement and/or judgment monies received on my behalf. The attorneys agree to advance, on behalf of the client, all out-of-pocket costs and expenses. These may include, but are not limited to, copies, postage, travel expenses, filing fees, deposition costs, fees of experts, costs of obtaining medical records, on-line legal research (Westlaw) and other reasonable costs and expenses.

CalBikeLaw.com

# AGNEW BRUSAVICH
## SERIOUS INJURY LAWYERS

Attorney Retainer Agreement
Page 2

**initial**

I further agree and understand that, in the event settlement and/or judgment monies are received by my attorneys, the attorneys' fees agreed upon above will be computed and based upon the total amount of any recovery and, following the computation and deduction of attorneys' fees, all sums expended and expenses incurred by my attorneys in representing my interests will be deducted before disbursing the remaining funds to me.

**initial**

Attorneys may also be entitled to statutory fees as discussed below under 42 USC §1988:

Attorneys may be awarded fees by the Court, including but not limited to fees pursuant to 42 U.S.C. §1988.  Client agrees and understands that any such fees awarded by the Court to attorneys belong to the attorneys and not to client.  Client understands that statutory fees and cost reimbursement will be requested by the Law Offices of **Agnew**Brusavich at the conclusion of the case if the attorneys prevail on a constitutional violation at trial.

**initial**

I further agree that, in the event it becomes necessary to appeal or to respond to an appeal from a judgment, a separate contract will be executed regarding the appeal.

**initial**

I understand that my attorneys are advancing litigation expenses based upon the confidence they have in their ability and expertise. Should I ever discharge them, I agree that they will be entitled to be reimbursed immediately for costs advanced by them up to the date of discharge.

**initial**

I further agree and do hereby give to my attorneys a lien on my causes of action and any judgment or compromise obtained thereon to the extent of the above-mentioned percentages, in addition to costs and expenses payable or incurred by them.

**initial**

In the event that no recovery is made, no charge will be made for legal services rendered by my attorneys.

**initial**

I understand that **Agnew**Brusavich are not certified public accountants or tax attorneys and will not be providing me with any tax advice or financial planning advice with respect to any recovery I obtain in this matter.

**initial**

This Agreement does not cover or apply to other or related legal actions or claims that may arise and may require other legal representation.  Examples of such include, but are not limited to, a medical malpractice action; a workers' compensation action; disputes with clients' own insurance companies regarding coverage; preparation of special needs trusts relating to any sums recovered. If such matters arise, and you wish the attorneys to handle such other and related claims, a separate written retainer agreement will be required.

**initial**

Duties of Clients:  I agree to be truthful with attorneys, to cooperate, to keep attorneys informed of any information and developments which may come to my attention, to abide by this Agreement, and to keep attorneys advised of my address, telephone number and whereabouts.  I agree to appear at all legal proceedings when attorneys deem it necessary, and to generally cooperate fully with my attorneys in all matters related to the preparation and presentation of my claims.

**AGNEW** BRUSAVICH
SERIOUS INJURY LAWYERS

Attorney Retainer Agreement
Page 3

*RG   AG*
initial

It is agreed that neither I nor my attorneys will settle or resolve this claim without the knowledge of the other. In order to facilitate the prompt clearing of any funds paid for settlement or satisfaction of any arbitration award or judgment, I authorize attorneys to endorse any negotiable instruments for purposes of depositing the funds into attorneys' client trust account.

*RG   AG*
initial

I understand and agree that my attorneys may communicate with me and others in this case via electronic mail (e-mail) which may include the transmission of attorney-client privileged matters such as advice and recommendations.

*RG   AG*
initial

Once attorneys have concluded their services for me under this agreement and following the termination of the professional relationship, I understand that **Agnew**Brusavich will not be required to maintain any papers, records, files or other writings related to this matter for more than three years after the conclusion of professional services. Attorneys have my permission to electronically store my file during this period of time and utilize such electronic method as the sole copy of my file, thereby authorizing destruction of all hard copies. Upon the expiration of the three year period, my attorneys have my permission to destroy the entire file.

I acknowledge receipt of a duplicate copy of this Agreement, signed by the attorney and me.

DATED:   December **27**, 2017

*Rudy Heer*
Rudy Guevara

*Anabel Gonzalez*

*Chito Ortega*

S.G. ~~█████████~~ by Anabel Gonzalez

M.G. ~~█████████~~ by Anabel Gonzalez

*Yasmin Ortega*

APPROVED:

DATED: December **27**, 2017

**AGNEW**BRUSAVICH
A Professional Corporation

BRUCE M. BRUSAVICH

# AGNEW BRUSAVICH
## SERIOUS INJURY LAWYERS

Gerald E. Agnew, Jr.
Bruce M. Brusavich
Stephen C. Rasak
Terry S. Schneier
Alexander B. Boris

Robert N. Stone
*Of Counsel*

Daniel V. Favero
*Administrator*

Kevin P. Culpepper
*Paralegal*

## TERMINOS DEL CONTRATO

Por medio del presente, nombro a AGNEWBRUSAVICH, Una Corporación Profesional, como mis abogados para entablar una acción judicial en contra de las personas o partidos que puedan ser responsables por el incidente que occurio el dia 2 de Diciembre de 2017, en la Ciudad de Colton, Condado de San Bernardino, Estado de California.

*E G*
iniciales

Autorizo a dichos abogados el tomar toda acción necesaria para representar mis intereses en dicho asunto. Tambien autorizo el que mis abogados contraten el conjunto de empleados que en su opinion de ellos decidan ser prudente en representar mis intereses, ademas autorizo que ellos utilicen las cantidades de dinero que ellos crean sean necesarias para esta acción.

*E G*
iniciales

Estoy de acuerdo y entiendo que cualquier suma de dinero que ellos gasten y cualquier otros gastos incurridos en la representación de mis intereses en esta acción seran cobrados como un gasto y serán descontados de cualquier arreglo y/o fallo recibido por ellos a beneficio mio.

*E G*
iniciales

Despues de ser sometido a una platica con mis abogados, he elegido no contratar a mis abogados en base a honorarios por hora, en su lugar me gustaria contratarlos en base a honorarios de contingencia, tambien he elegido no proporcionar un contrato que cubra gastos de litigacion o pagar por gastos que son incurridos y solicitados.

*E G*
iniciales

Entiendo que los honorarios pagados a nuestros abogados no están establecidos por ley, pero son negociados entre mis abogados y yo. Despues de platicarlo con mis abogados, estoy de acuerdo en pagar honorarios de abogado en un treinta-y tres y un tercio deporciento (33 1/3%) de cualquier recuperacion por medio de un arreglo sin litigacion y si el caso es arbitrado o llevado a juicio sujeto a aprobación de la corte sera de un cuarenta porciento (40%) ~~Si el caso se resuelve dentro de sesenta (60) days apartir de la primera fecha de juicio y si el asunto se resuelve por medio de un acuerdo o juicio despues de sesenta (60) dias antes de la primera fecha de juicio, los honorarios de abogado seran de un cuarenta y cinco por ciento (45%) de la cantidad recuperada.~~



Estoy the acuerdo que mis abogados se asocien con otro abogado para que en conjunto puedan enjuiciar este reclamo. Es entendible que los honorarios de abogado pagados por el cliente no aumentara y que los abogados deben compartir los honorarios previstos en este acuerdo.



Main Office: 20355 Hawthorne Blvd | Torrance, CA 90503 | T: 310.793.1400 | F: 310.793.1499
Orange County: 2171 Campus Dr #240 | Irvine, CA 92612 | T: 949.229.7060 | F: 949.229.7960
E: ab@agnewbrusavich.com | www.agnewbrusavich.com

**AGNEW** BRUSAVICH

SERIOUS  INJURY  LAWYERS

Terminos Del Contrato
Pagina 2

*EG*
iniciales
Ademas, estoy de acuerdo y entiendo que en el evento de una compensacion monetaria y/o fallo sea recibido por mis abogados, los honorarios de abogado hechos en este acuerdo deberán ser calculados y basados en la cantidad total de cualquier recuperación y una vez hecho el calculo y la deducción de honorarios de abogado todas las sumas y gastos incurridos por mis abogados a raiz de la representación de mis intereses, serán deducidos por ellos antes de distribuir el resto de los fondos hacia mi.

*EG*
iniciales
Ademas, estoy de acuerdo, que en el evento que sea necesario apelar or responder a una apelación de un fallo favorable para mi un contrato por separado sera ejecutado con referencia a la apelación.

*EC*
iniciales
Esta acordado y entendido por parte del cliente que los honorarios de abogado seras pagados bajo este contrato y deberan ser compartidos entre las oficinas legales de AgnewBrusavich y las oficinas legales de O'Leno y O'Leno. Tal y como se indica en la siguiente clausula:

*EG*
iniciales
En consideracion por los servicios proporcionados por las oficinas legales de O'Leno y O'Leno, los honorarios de abogado deberan ser pagados en un treinta y trees y un tercio porciento (33 - 1/3%) por todos los honorarios de abogado generados. Es entendido, que los honorarios de abogado pagados por el cliente no son sujeto a incrementar debido a la division de honorarios entre las oficinas legales de AgnewBrusavich y O'Leno y O'Leno.

*EG*
iniciales
Entiendo que mis abogados estan adelantando gastos de litigacion basado sobre la confiabilidad que tienen en su habilidad y competencia. Si yo llegara a la decision de no requerir de sus servicios, yo estoy de acuerdo que tienen derecho a un reembolso inmediato por los gastos de adelanto que hayan pagado hasta ese dia, los cuales seran pagados por el cliente.

*EG*
iniciales
Ademas, estoy de acuerdo y otorgo a mis abogados mi derecho de accion sobre el derecho de retención por cualquier fallo o arreglo obtenido hasta el alcance de los porcentajes mencionados anteriormente, en adición a los costos y gastos adelantados hechos por ellos.

*EG*
iniciales
En el evento de no llegar a una conclusion satisfactoria en este caso legal. Mis abogados no cobraran por servicios legales prestados.

*EC*
iniciales
Yo entiendo que AgnewBrusavich no son contadores publicos certificados o abogados en impuestos y no me proveeran con ningún consejo sobre impuestos o planificación financiera con respecto a cualquier recuperación que yo obtenga de este caso.





**AGNEW**BRUSAVICH
SERIOUS INJURY LAWYERS

Terminos Del Contrato
Pagina 3

_____
iniciales

Este contrato no cubre o aplica para otras acciones legales relacionadas o reclamos que pudieran surgir que requieran de otra representacion legal. Ejemplos que incluyen semejantes acciones pero que no son limitadas son: una accion por negligencia medica; una accion por compensacion por accidentes del trabajo; disputar con las propias companias de seguro de los clientes relacionado con una covertura; con la preparacion y necesidades especiales de un fideicomiso relacionado con la recuperacion de una suma de dinero. Si dichos asuntos surgieran y a usted le gustaria que los abogados manejaran estos u otros reclamos relacionados, un nuevo contracto por separado y escrito sera requerido. Este contrato cubre servicios legales necesarios para llegar a un convenio o un arreglo y hacer valer cualquier derecho de retencion en este asunto legal, tal como un derecho de retencion con una compania de seguro para compensacion por acidentes del trabajo, un derecho de retencion con una compania de seguro medico/cuidado de salud o por un reclamo de indemnizacion.

*E G*
iniciales

Obligaciones de los Clientes: Estoy de acuerdo de ser honesto con los abogados, cooperar, mantener informado al abogado sobre cualquier informacion y acontecimientos que se presenten dirigidos a mi atencion, cumplir con este contrato y mantener a los abogados al corriente con mi domicilio, numero telefonico y paradero. Estoy de acuerdo en presentarme a todos los procedimientos legales cuando mis abogados lo consideren necesario y cooperar generalmente y completamente con mis abogados con todos los asuntos relacionados con la preparacion y representacion de mis reclamos legales.

*E G*
iniciales

Es acordado que ni el cliente ni el abogado negociara o resolvera este reclamo sin el conocimiento de la otra parte.  Para poder facilitar la autorización rapida de cualquier fondo pagado por negociación o satisfacción de cualquier fallo de arbitración, el cliente autoriza que los abogados endosen culaquier instrumento negociable para el proposito de depositar los fondos en la cuenta de fondos de los abogados.

*E G*
iniciales

Yo entiendo y estoy de acuerdo que mis abogados posiblemente se comunique conmigo y otras personas en este caso por medio de corre electronico, lo cual podria incluir comunicacion confidencial entre abogado-cliente, tal como consejos y recomendaciones para su asunto legal.

*E G*
iniciales

Una Vez que los abogados hayan concluido con sus servicios a mi nombre bajo este contrato y prosiguiendo con la terminacion de la relacion profesional. Yo entiendo que AgnewBrusavich no es requerido de mantener ningunos papeles, registros, archivos u otros escritos relacionados con este asunto por mas de tres anos despues que haygan concluido con sus servicios profesionales. Los abogados tienen mi permiso de almacenar mi archivo electronicamente durante este periodo de tiempo y utilizar dicho metodo electronico como copia exclusiva de mi archivo. Por medio de este contrato autorizo la destruccion de todas las copias exclusivas, una vez que el periodo de los tres anos llegue a su vencimiento, mis abogados tienen mi permiso de destruir mi archivo en su totalidad.



AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS

Terminos Del Contrato
Pagina 4

*E.G.*

iniciales

Yo reconozco el recibimiento del duplicado de este Contrato, firmado por el abogado y el
cliente.

FECHADO:   12-27-17

_____
ELVIRA GUEVARA

ACEPTADO:

FECHADO:   Dec. 27, 2017

AGNEW & BRUSAVICH
Una Corporación Profesional

_____
BRUCE M. BRUSAVICH

EXHIBIT 2

Bruce M. Brusavich, SBN 93578
Anna H. Cronk Small, SBN 272970
**AGNEW**BRUSAVICH
A Professional Corporation
20355 Hawthorne Boulevard
Second Floor
Torrance, California  90503
(310) 793-1400

Attorneys for Plaintiffs ELVIRA GUEVARA, RUDY GUEVARA, ANABEL
GONZALEZ, S.G., M.G., YASMIN ORTEGA and CHITO ORTEGA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.G., a minor, individually and as successor-in-interest to decedent, Mario Guevara, by and through her Guardian ad Litem SUSIE CASTRO; ELVIRA GUEVARA, individually; RUDY GUEVARA, individually; ANABEL GONZALEZ, individually; S.G., a minor, individually, by and through her Guardian ad Litem ANABEL GONZALEZ; M.G., a minor, individually, by and through her Guardian ad Litem ANABEL GONZALEZ; YASMIN ORTEGA, individually; and CHITO ORTEGA, individually; <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF COLTON; and DOES 1 - 10 inclusive, <br><br> Defendants. | CASE NO. <br><br> **APPLICATION OF ANABEL GONZALEZ FOR APPOINTMENT AS GUARDIAN AD LITEM FOR MINOR PLAINTIFF M.G.** <br><br> [Fed. R. Civ. P. 17(c) and Cal. Code Civ. Proc. § 373] <br><br> [Consent of Nominee to Appointment as Guardian ad Litem; Proposed Order filed concurrently herewith] |

///

///

///

APPLICATION FOR APPOINTMENT OF ANABEL GONZALEZ AS GUARDIAN AD LITEM FOR MINOR PLAINTIFF M.G.

## APPLICATION OF ANABEL GONZALEZ FOR APPOINTMENT AS
## GUARDIAN AD LITEM FOR MINOR PLAINTIFF M.G.

1.  M.G. is a minor plaintiff in the above-referenced case.

2.  Plaintiff M.G. is eleven (11) years of age.

3.  Anabel Gonzalez is the natural mother of minor plaintiff M.G.

4.  Minor plaintiff M.G. has claims, as alleged in the complaint filed in the herein action, arising out of the violation of her rights and her uncle's civil rights.

5.  Anabel Gonzalez has no interest potentially adverse to minor plaintiff M.G.

6.  Anabel Gonzalez is a resident of County of San Bernardino, State of California.

7.  Anabel Gonzalez is a responsible adult and fully competent to understand and protect the rights of said minor. *See* Consent of Nominee Anabel Gonzalez to Appointment as Guardian ad Litem for M.G. filed concurrently herewith.

Plaintiffs therefore respectfully request an order appointing Anabel Gonzalez as guardian ad litem for minor plaintiff M.G.

Dated: 9/17/18

Anabel Gonzalez
[proposed] guardian ad litem

Dated: Sept 17, 2018

AGNEW BRUSAVICH
A Professional Corporation

Bruce M. Brusavich
Anna H. Cronk/Small
Attorneys for Plaintiffs

Case 5:18-cv-02386-PJW   Document 143   Filed 02/27/20   Page 28 of 52   Page ID #:3582
Case 2:22-cv-00085-SC-SCR   Document 62-1   Filed 02/02/26   Page 29 of 53
Case 5:18-cv-02386-PJW   Document 62-1   Filed 11/09/18   Page 2 of 2   Page ID #:42

Bruce M. Brusavich, SBN 93578
Anna H. Cronk Small, SBN 272970
**AGNEW**BRUSAVICH
A Professional Corporation
20355 Hawthorne Boulevard
Second Floor
Torrance, California  90503
(310) 793-1400

Attorneys for Plaintiffs  ELVIRA  GUEVARA,  RUDY  GUEVARA,  ANABEL
GONZALEZ, S.G., M.G., YASMIN ORTEGA and CHITO ORTEGA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.G., a minor, individually and as successor-in-interest to decedent, Mario Guevara, by and through her Guardian ad Litem SUSIE CASTRO; ELVIRA GUEVARA, individually; RUDY GUEVARA, individually; ANABEL GONZALEZ, individually; S.G., a minor, individually, by and through her Guardian ad Litem ANABEL GONZALEZ; M.G., a minor, individually, by and through her Guardian ad Litem ANABEL GONZALEZ; YASMIN ORTEGA, individually; and CHITO ORTEGA, individually; | CASE NO. |
| | **CONSENT OF NOMINEE ANABEL GONZALEZ TO APPOINTMENT AS GUARDIAN AD LITEM FOR S.G.** |
| | [Fed. R. Civ. P. 17(c) and Cal. Code Civ. Proc. § 373] |
| | [Application for Appointment as Guardian ad Litem; Proposed Order filed concurrently herewith] |
| Plaintiffs, | |
| vs. | |
| CITY OF COLTON; and DOES 1 - 10 inclusive, | |
| Defendants. | |

///

///

///

CONSENT OF NOMINEE ANABEL GONZALEZ TO APPOINTMENT AS GUARDIAN AD LITEM FOR MINOR
PLAINTIFF S.G.

## CONSENT OF NOMINEE

I, Anabel Gonzalez, the nominee and natural mother to S.G., a minor plaintiff in the above-referenced action and the niece of the decedent, Mario Guevara, consent to act as guardian ad litem for S.G. in the above-referenced action.

I declare under penalty of perjury under the laws of the State of California dn the United States of America that the forgoing is true and correct.

Executed this _____ 17 _____ day of September, 2018, in Colton, California.

_____
Anabel Gonzalez

Bruce M. Brusavich, SBN 93578
Anna H. Cronk Small, SBN 272970
**AGNEW**BRUSAVICH
A Professional Corporation
20355 Hawthorne Boulevard
Second Floor
Torrance, California 90503
(310) 793-1400

Attorneys for Plaintiffs ELVIRA GUEVARA, RUDY GUEVARA, ANABEL
GONZALEZ, S.G., M.G., YASMIN ORTEGA and CHITO ORTEGA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.G., a minor, individually and as successor-in-interest to decedent, Mario Guevara, by and through her Guardian ad Litem SUSIE CASTRO; ELVIRA GUEVARA, individually; RUDY GUEVARA, individually; ANABEL GONZALEZ, individually; S.G., a minor, individually, by and through her Guardian ad Litem ANABEL GONZALEZ; M.G., a minor, individually, by and through her Guardian ad Litem ANABEL GONZALEZ; YASMIN ORTEGA, individually; and CHITO ORTEGA, individually; <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF COLTON; and DOES 1 - 10 inclusive, <br><br> Defendants. | CASE NO. <br><br> **APPLICATION OF ANABEL GONZALEZ FOR APPOINTMENT AS GUARDIAN AD LITEM FOR MINOR PLAINTIFF S.G.** <br><br> [Fed. R. Civ. P. 17(c) and Cal. Code Civ. Proc. § 373] <br><br> [Consent of Nominee to Appointment as Guardian ad Litem; Proposed Order filed concurrently herewith] |

///

///

///

1

## APPLICATION OF ANABEL GONZALEZ FOR APPOINTMENT AS
## GUARDIAN AD LITEM FOR MINOR PLAINTIFF S.G.

1.   S.G. is a minor plaintiff in the above-referenced case.

2.   Plaintiff S.G. is thirteen (13) years of age.

3.   Anabel Gonzalez is the natural mother of minor plaintiff S.G.

4.   Minor plaintiff S.G. has claims, as alleged in the complaint filed in the herein action, arising out of the violation of her rights and her uncle's civil rights.

5.   Anabel Gonzalez has no interest potentially adverse to minor plaintiff S.G.

6.   Anabel Gonzalez is a resident of County of San Bernardino, State of California.

7.   Anabel Gonzalez is a responsible adult and fully competent to understand and protect the rights of said minor. *See* Consent of Nominee Anabel Gonzalez to Appointment as Guardian ad Litem for S.G. filed concurrently herewith.

   Plaintiffs therefore respectfully request an order appointing Anabel Gonzalez as guardian ad litem for minor plaintiff M.G.

Dated: 9/17/18

_____
Anabel Gonzalez
[proposed] guardian ad litem

Dated: Sept 19, 2018

AGNEW BRUSAVICH
A Professional Corporation

_____
Bruce M. Brusavich
Anna H. Cronk Small
Attorneys for Plaintiffs

APPLICATION FOR APPOINTMENT OF ANABEL GONZALEZ AS GUARDIAN AD LITEM FOR MINOR PLAINTIFF S.G.

EXHIBIT 3

**AGNEW BRUSAVICH**
S E R I O U S   I N J U R Y   L A W Y E R S

Gerald E. Agnew, Jr.
Bruce M. Brusavich
Stephen C. Rasak
Terry S. Schneier
Alexander B. Boris

Robert N. Stone
*Of Counsel*

Daniel V. Favero
*Administrator*

Kevin P. Culpepper
*Paralegal*

## ATTORNEY RETAINER AGREEMENT

I hereby retain **AGNEW BRUSAVICH**, A Professional Corporation, as my attorneys to prosecute a claim against the persons and entities who may be liable for injuries and damages arising out of an incident that occurred on or about <u>December 2, 2017</u>, in the City of <u>Colton</u>, County of <u>San Bernardino</u>, State of California.

*initial*

I authorize my attorneys to take all action deemed by them to be advisable in representing my interests in this matter. I also authorize my attorneys to employ and/or retain whatever personnel they, in their discretion, decide are reasonable and necessary in representing my interests, and I further authorize them to expend whatever sums they, in their discretion, deem advisable in representing my interests in this matter.

*initial*

After discussion with my attorneys, I elect not to retain my attorneys on an hourly basis and instead, want to retain them on a contingency fee basis. I also elect not to provide a retainer to cover litigation expenses or to pay expenses as they are incurred and request and authorize my attorneys to advance litigation expenses on my behalf.

*initial*

I understand that the fees paid to my attorneys are not set by law, but are negotiated between us. After discussion with my attorneys, I agree to pay my attorneys fees of thirty-three and one-third percent (33-1/3%) of any recovery in the event that settlement is reached before a lawsuit is filed or arbitration is demanded, at which time the matter proceeds to litigation. Thereafter I agree to pay my attorneys fees of forty percent (40%) of any recovery whether by settlement, judgment or award.

*initial*

I agree that my attorneys may associate other counsel to jointly prosecute this claim. It is understood that the attorneys' fees payable by client shall not increase and that the attorneys must share the fees provided for in this agreement.

*initial*

I agree and understand that money spent and expenses incurred by my attorneys in representing my interests will be chargeable to me as expenses and will be deducted from any settlement and/or judgment monies received on my behalf. The attorneys agree to advance, on behalf of the client, all out-of-pocket costs and expenses. These may include, but are not limited to, copies, postage, travel expenses, filing fees, deposition costs, fees of experts, costs of obtaining medical records, on-line legal research (Westlaw) and other reasonable costs and expenses.


BMB

Main Office: 20355 Hawthorne Blvd  |  Torrance, CA 90503  | T: 310.793.1400  | F: 310.793.1499
Orange County: 2171 Campus Dr #240  |  Irvine, CA 92612  | T: 949.229.7060  | F: 949.229.7960
E: ab@agnewbrusavich.com  |  www.agnewbrusavich.com

**CalBikeLaw.com**

**AGNEW**BRUSAVICH
SERIOUS INJURY LAWYERS

Attorney Retainer Agreement
Page 2



I further agree and understand that, in the event settlement and/or judgment monies are received by my attorneys, the attorneys' fees agreed upon above will be computed and based upon the total amount of any recovery and, following the computation and deduction of attorneys' fees, all sums expended and expenses incurred by my attorneys in representing my interests will be deducted before disbursing the remaining funds to me.



Attorneys may also be entitled to statutory fees as discussed below under 42 USC §1988:

Attorneys may be awarded fees by the Court, including but not limited to fees pursuant to 42 U.S.C. §1988.  Client agrees and understands that any such fees awarded by the Court to attorneys belong to the attorneys and not to client.  Client understands that statutory fees and cost reimbursement will be requested by the Law Offices of **Agnew**Brusavich at the conclusion of the case if the attorneys prevail on a constitutional violation at trial.



I further agree that, in the event it becomes necessary to appeal or to respond to an appeal from a judgment, a separate contract will be executed regarding the appeal.



I understand that my attorneys are advancing litigation expenses based upon the confidence they have in their ability and expertise.  Should I ever discharge them, I agree that they will be entitled to be reimbursed immediately for costs advanced by them up to the date of discharge.



I further agree and do hereby give to my attorneys a lien on my causes of action and any judgment or compromise obtained thereon to the extent of the above-mentioned percentages, in addition to costs and expenses payable or incurred by them.



In the event that no recovery is made, no charge will be made for legal services rendered by my attorneys.



I understand that **Agnew**Brusavich are not certified public accountants or tax attorneys and will not be providing me with any tax advice or financial planning advice with respect to any recovery I obtain in this matter.

This Agreement does not cover or apply to other or related legal actions or claims that may arise and may require other legal representation.  Examples of such include, but are not limited to, a medical malpractice action; a workers' compensation action; disputes with clients' own insurance companies regarding coverage; preparation of special needs trusts relating to any sums recovered.  If such matters arise, and you wish the attorneys to handle such other and related claims, a separate written retainer agreement will be required.



Duties of Clients:  I agree to be truthful with attorneys, to cooperate, to keep attorneys informed of any information and developments which may come to my attention, to abide by this Agreement, and to keep attorneys advised of my address, telephone number and whereabouts.  I agree to appear at all legal proceedings when attorneys deem it necessary, and to generally cooperate fully with my attorneys in all matters related to the preparation and presentation of my claims.

BMB

**AGNEW** BRUSAVICH
SERIOUS INJURY LAWYERS

Attorney Retainer Agreement
Page 3

*initial*

It is agreed that neither I nor my attorneys will settle or resolve this claim without the knowledge of the other. In order to facilitate the prompt clearing of any funds paid for settlement or satisfaction of any arbitration award or judgment, I authorize attorneys to endorse any negotiable instruments for purposes of depositing the funds into attorneys' client trust account.

*initial*

I understand and agree that my attorneys may communicate with me and others in this case via electronic mail (e-mail) which may include the transmission of attorney-client privileged matters such as advice and recommendations.

*initial*

Once attorneys have concluded their services for me under this agreement and following the termination of the professional relationship, I understand that **Agnew**Brusavich will not be required to maintain any papers, records, files or other writings related to this matter for more than three years after the conclusion of professional services. Attorneys have my permission to electronically store my file during this period of time and utilize such electronic method as the sole copy of my file, thereby authorizing destruction of all hard copies. Upon the expiration of the three year period, my attorneys have my permission to destroy the entire file.

I acknowledge receipt of a duplicate copy of this Agreement, signed by the attorney and me.

DATED: January 20, 2018

SUSIE CASTRO as GAL for
J.G.

APPROVED:
DATED: January 15, 2018

**AGNEW**BRUSAVICH
A Professional Corporation

BRUCE M. BRUSAVICH

EXHIBIT 4



CPD 000696



EXHIBIT 5

## AGNEW BRUSAVICH
### Litigation Costs Advanced
- - - - - - - - - - - - - - - - - - - - - - -

| Date | Num | Source Name | Memo | Amount |
|------|-----|-------------|------|--------|
| **3160-Guevara** | | | | |
| 06/08/2018 | 47329 | San Bernardino County Coro... | Coroners Report | 0.20 |
| 08/02/2018 | 47391 | Signal Attorney Service | Process Serv 5/18 | 151.34 |
| 09/24/2018 | 47467 | San Bernardino County Rec... | Death Certificate | 42.00 |
| 10/02/2018 | 47476 | Anabel Gonzalez | Death Certificates | 42.00 |
| 02/01/2019 | 47671 | San Bernardino County Sheriff | Autopsy Report | 15.00 |
| 02/28/2019 | 47709 | San Bernardino County DBH | Med Recs | 17.55 |
| 03/21/2019 | 47746 | San Bernardino County Sheriff | Autopsy Photos | 760.08 |
| 06/13/2019 | 47917 | Signal Attorney Service | Process Service 3/19 | 87.55 |
| 07/18/2019 | 47975 | Golden State Overnight | Overnight Delivery (6/30/19) | 9.54 |
| 08/05/2019 | 48000 | Forensic Protection | Professional Services | 695.00 |
| 11/26/2019 | 48123 | Elite Court Reporting | Depo Trans Rudy Guevara | 1,265.65 |
| 11/26/2019 | 48123 | Elite Court Reporting | Depo Trans Elvira Guevara | 916.40 |
| 11/26/2019 | 48123 | Elite Court Reporting | Depo Trans Brian Hutchings | 955.50 |
| 11/26/2019 | 48125 | C Jackson Investigations | Investigation | 250.00 |
| 12/17/2019 | 48145 | Kris Mohandie | Depo Fee | 1,250.00 |
| 12/17/2019 | | Bank of America Mastercard | BMB Parking - Mohandie Depo | 38.40 |
| 12/26/2019 | 48163 | Diana Martinez | Interpreter Half Day Depo Elvira Guevara | 368.00 |
| 01/21/2020 | 48185 | MotionLit Services Inc | Video Enhancement | 375.00 |
| 01/31/2020 | | Postage | Postage | 51.02 |
| 01/31/2020 | | Photocopy Charges | Copy Charges | 394.70 |
| 01/31/2020 | | Photocopy Charges | Color Copies | 4.20 |
| 01/31/2020 | | Photocopy Charges | Copy Charge Credit | -197.35 |
| 01/31/2020 | 48205 | Law office of Dale Galipo | 50% Sharing of Costs | 9,888.39 |
| Total 3160-Guevara | | | | 17,380.17 |
| **TOTAL** | | | | **17,380.17** |

EXHIBIT 6

ATTACHMENT TO PETITION AND ORDER APPROVING
FOR MINORS COMPROMISE

From the total gross settlement The City of Colton (hereinafter referred to as "Defendant") has agreed to issue a separate settlement check in the amount of $31,609.12 to fund and purchase the structured annuity for the minor Plaintiff M.G., by and through her Guardian ad Litem Anabel Gonzalez.

The check will be made payable to Pacific Life & Annuity Services Inc. (hereinafter referred to as "Assignee") which will provide the following periodic payments in Section A to be made by Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier") rated A+ Class XV by A.M. Best Company.

The details of the periodic payments will be set forth in section (A), hereinbelow. All sums and periodic payments set forth in the section entitled <u>Payments</u> constitute damages on account of personal physical injuries or physical illness, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

A)    <u>Payments</u>:

**<u>Periodic payments payable to M.G. :</u>**

$6,275.00 Payable Annually Guaranteed for 4 years only,
Commencing on 08/29/2024 with the last payment on 08/29/2027

$11,330.00 Lump Sum Payment on 08/29/2031

The Defendant will make a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue code of 1986, as amended, to Assignee, of the Defendant's liability to make the periodic payments described in paragraph (A) herein. Such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Insurer from such obligations hereunder as are assigned to Assignee.

The Defendant shall have the right to fund its liability to make periodic payments by purchasing a "qualified funding asset", within the meaning of Section 130(d) of the Code, in the form of an annuity policy from the Annuity Carrier.

The Assignee shall be the owner of the annuity policy or policies, and shall have all rights of ownership. The Assignee will have the Annuity Carrier mail payments directly to the Plaintiff. The Plaintiff shall be responsible for maintaining the currency of the proper mailing address and mortality information to Assignee.

## ATTACHMENT TO PETITION AND ORDER APPROVING
## FOR MINORS COMPROMISE

From the total gross settlement The City of Colton (hereinafter referred to as "Defendant") has agreed to issue a separate settlement check in the amount of $31,609.12 to fund and purchase the structured annuity for the minor Plaintiff S.G., by and through her Guardian ad Litem Anabel Gonzalez.

The check will be made payable to Pacific Life & Annuity Services Inc. (hereinafter referred to as "Assignee") which will provide the following periodic payments in Section A to be made by Pacific Life Insurance Company, (hereinafter referred to as "Annuity Carrier") rated A+ Class XV by A.M. Best Company.

The details of the periodic payments will be set forth in section (A), hereinbelow. All sums and periodic payments set forth in the section entitled Payments constitute damages on account of personal physical injuries or physical illness, arising from an occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

A)      Payments:

### Periodic payments payable to S.G. :

$6,115.00 Payable Annually Guaranteed for 4 years only,
Commencing on 01/24/2023 with the last payment on 01/24/2026

$10,100.00 Lump Sum Payment on 01/24/2030

The Defendant will make a "qualified assignment" within the meaning of Section 130(c), of the Internal Revenue code of 1986, as amended, to Assignee, of the Defendant's liability to make the periodic payments described in paragraph (A) herein. Such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Insurer from such obligations hereunder as are assigned to Assignee.

The Defendant shall have the right to fund its liability to make periodic payments by purchasing a "qualified funding asset", within the meaning of Section 130(d) of the Code, in the form of an annuity policy from the Annuity Carrier.

The Assignee shall be the owner of the annuity policy or policies, and shall have all rights of ownership. The Assignee will have the Annuity Carrier mail payments directly to the Plaintiff. The Plaintiff shall be responsible for maintaining the currency of the proper mailing address and mortality information to Assignee.



*Please provide a copy of the minor's birth certificate*

## INFORMATION REQUEST FORM

**Legal Name:** _____

**Date of Birth:** _____     **Gender:** Male / Female *(please circle)*

**SSN:** _____     **Phone Number:** _____

**Residence Address (no PO Box):** _____

_____

**Mailing Address (if different than above):** _____

_____

### THE BENEFICIARY WILL BE THE MINOR'S ESTATE

EXHIBIT 7



**PACIFIC LIFE**
**& ANNUITY SERVICES, INC.**

# Qualified Assignment Agreement
### In Accordance With Internal Revenue Code Section 130

**"Claimant(s)":**   M.G.

⸻⸻⸻⸻ (redacted)

(See Addendum No. 1 for additional claimants)

**"Assignor(s)":**
Assignor(1)         City of Colton

**"Settlement Agreement":**

[Date and title of settlement agreement, order or other document embodying
the Assignor's obligation to make the agreed periodic payments]

**"Assignee":**         Pacific Life & Annuity Services, Inc.

**"Annuity Issuer":**     Pacific Life

**"Effective Date":**

**This Qualified Assignment Agreement** is made and entered into as of the Effective Date by and among the
undersigned parties with reference to the following facts:

A   Claimant(s) and Assignor are parties to or are otherwise subject to or entitled to receive payments under the
above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic
payments to or for the benefit of Claimant(s) as specified or referred to in paragraph 11 of this Agreement (the
"Periodic Payments"); and

B   Assignor and Assignee wish to effect a "qualified assignment" within the meaning and subject to the
conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

**Now, therefore**, in consideration of the foregoing and for other good and valuable consideration, the parties
agree as follows:

1.  **Assignment and Assumption**. Assignor hereby assigns to Assignee, and Assignee hereby accepts and
assumes, all of Assignor's liability to make the Periodic Payments.

Pacific Life refers to Pacific Life Insurance Company and its affiliates, including Pacific Life & Annuity Company. Insurance
products are issued by Pacific Life Insurance Company in all states except New York and in New York by Pacific Life &
Annuity Company. Product availability and features may vary by state. Each company is solely responsible for the financial
obligations accruing under the products it issues. Insurance product and rider guarantees are backed by the financial strength
and claims-paying ability of the issuing company.

2.  **Nature of Periodic Payments**.  The Periodic Payments constitute

    i.    damages (other than punitive damages), whether by suit or agreement, or

    ii.   compensation under a workers' compensation act,

on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3.  **Extent of Assignee's Liability**.  Assignee's liability to make the Periodic Payments shall be no greater than the liability of Assignor immediately prior to the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments. Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4.  **Qualified Funding Asset**.  Assignee will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic Payments. Assignee shall be designated as the owner of the Annuity.  All rights of legal ownership and control of the Annuity shall (subject to paragraph 9 of this Agreement) be and remain vested exclusively in Assignee; provided, however, that the Annuity shall be used by Assignee to fund the Periodic Payments and shall at all times be designated by Assignee on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement.  Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant nor any Successor Payee shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includible in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5.  **Delivery of Payments**.  Assignee may have Annuity Issuer send payments directly to a Claimant, or, if applicable, to a Successor Payee (as defined in paragraph 8 of this Agreement), or deliver payments by electronic funds transfer to an FDIC-insured depository institution in the United States for credit (directly or indirectly) to an insured account in the name of such Claimant or Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford the Claimant or any Successor Payee any rights of ownership or control of the Annuity.

6.  **Discharge of Liability**.  The Assignee's liability to make each Periodic Payment to the Claimant or Successor Payee designated to receive such payment shall be discharged automatically at such time as a corresponding payment is made to such Claimant or Successor Payee by the Annuity Issuer.

7.  **Acceleration, Transfer of Payment Rights**.  None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

    i.    Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

    ii.   Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

No Claimant or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8. **Contingent Beneficiaries**. Any Periodic Payments to be made after the death of any Claimant or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement or, if the Settlement Agreement does not provide for such designation, then to the party designated in conformity with this paragraph 8. Any party so designated is referred to in this Agreement as a "Contingent Beneficiary." If no Contingent Beneficiary is living at the time of the death of a Claimant or Successor Payee, payment shall be made to the decedent's estate. As used in this agreement the term "Successor Payee" refers to a Contingent Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Contingent Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee (or its authorized agent) in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee (or its authorized agent). Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Contingent Beneficiary shall be deemed to be revocable; and no party that is designated as a Contingent Beneficiary (other than a party irrevocably designated as a Contingent Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Contingent Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

    **Note:** Beneficiaries section only applies to guaranteed benefits (Period Certain, Lump Sum(s), Life with Certain payments).

9. **Failure of Settlement Agreement**. If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority): (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, and Assignee's acceptance of such assignment shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

    **Failure to Satisfy Section 130(c)**. If at any time prior to completion of the Periodic Payments, it is conclusively determined that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement in a final, non-appealable ruling or order: (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, Assignee's acceptance of such assignment shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

10. **Governing Law; Disclosure of Certain Tax Information; Binding Effect.**

    (i)   This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of **California** ;[1] provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.

    (ii)  This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

11. **Description of Periodic Payments**. The Periodic Payments are as set forth in attached **Addendum No. 1**, which is hereby incorporated in and made a part of this Agreement.

---

1 *In choosing governing law the parties should be aware that the effectiveness of both contractual and "legal" restriction on assignment of rights to receive future Periodic Payments – including (i) contractual restrictions integral to the intended tax treatment of periodic payments and the annuities held as qualified funding assets and (ii) statutes, regulations and "rule[s] of law" prohibiting, restricting or requiring consent for assignments – may be limited (unintentionally) by sweeping override provisions enacted in §§ 9-406 and 9-408 of Revised Article 9 of the Uniform Commercial Code, which took effect in most states in July, 2001. Most states have enacted amendments that make the overrides in §§ 9-406 and 9-408 inapplicable to structured settlements; but until appropriate corrective amendments are in effect nationwide, the parties to a qualified assignment may find it advisable to avoid designating as governing law the law of a state that has not yet enacted such amendments.*

**This Qualified Assignment Agreement** is signed in one or more counterparts as of the Effective Date by the following:

**Assignor:** City of Colton

By: _____
          Authorized Representative

Title: _____


**Assignee:** Pacific Life & Annuity Services, Inc.          **Assignee:** Pacific Life & Annuity Services, Inc.

By: _____          By: _____
          Authorized Representative                                        Authorized Representative

Title: _____          Title: _____

## Addendum No. 1
## Description of Periodic Payments

Payee :  
Benefit(s):

1. **Period Certain Annuity** - $6,115.00 payable annually, guaranteed for 4 year(s),  beginning on 01/24/2023, with the last guaranteed payment on 01/24/2026.

2. **Guaranteed Lump Sum** - $10,100.00 paid as a lump sum on 01/24/2030 guaranteed.

Payee :
Benefit(s):

1. **Period Certain Annuity** - $6,275.00 payable annually, guaranteed for 4 year(s),  beginning on 08/29/2024, with the last guaranteed payment on 08/29/2027.

2. **Guaranteed Lump Sum** - $11,330.00 paid as a lump sum on 08/29/2031 guaranteed.

**Initials**

**Assignor(s):** _____

**Assignee:** _____

**Assignee:** _____

**PROOF OF SERVICE**

  I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is AGNEW BRUSAVICH, 20355 Hawthorne Blvd., 2nd Floor, Torrance, California.  On February 27, 2020, I served the within document **PLAINTIFFS' EX PARTE APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.; VERIFICATION BY GUARDIAN AD LITEM; AND ACCOMPANYING DECLARATION OF PLAINTIFFS' COUNSEL, BRUCE M. BRUSAVICH; [PROPOSED] ORDER APPROVING UNOPPOSED** *EX PARTE* **APPLICATION FOR APPROVAL OF COMPROMISE OF THE CLAIMS OF THE MINOR PLAINTIFFS M.G. AND S.G.**

☐  by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Torrance, California, addressed as set forth below:

☐  by placing a true copy thereof enclosed in a sealed envelope(s), and caused such envelope(s) to be delivered by hand delivery addressed pursuant to the document(s) listed above to the person(s) at the address(es) set forth below.

☒  by electronic service.  Based on a court order or an agreement of the parties to accept service by electronic transmission.  I caused the documents to be sent to the persons at the electronic notification addresses as set forth below:

| Eugene P. Ramirez<br>Tony M. Sain<br>Lynn Carpenter<br>MANNING & KASS<br>ELLROD, RAMIREZ, TRESTER LLP<br>801 S. Figueroa Street, 15th Floor<br>Los Angeles, CA 90017-3012<br>epr@manningllp.com<br>tms@manningllp.com<br>llc@manningllp.com | ATTORNEYS FOR DEFENDANTS CITY OF COLTON AND OFFICER MICHAEL SANDOVAL<br><br><br><br>(213) 624-6900<br>FAX (213) 624-6999 |
|---|---|
| Dale K. Galipo<br>Hang Lee<br>LAW OFFICES OF DALE K. GALIPO<br>21800 Burbank Boulevard<br>Suite 310<br>Woodland Hills, CA 91367<br>dalegalipo@yahoo.com<br>hlee@galipolaw.com | ATTORNEYS FOR PLAINTIFFS J.G., through her Guardian ad Litem SUSIE CASTRO<br><br><br>(818) 347-3333<br>FAX (818) 347-4118 |

I am readily familiar with the firm's practices of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served,

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD . TORRANCE, CA 90503
T: (310) 793-1400 F: (310) 793-1499

1

2

service is presumed invalid if post cancellation date or postage meter date is
3    more than one day after date of deposit for mailing in affidavit.

4    ☐          (State) I declare under penalty of perjury under the laws of the State of
California that the above is true and correct.
5
☒          (Federal) I declare that I am employed in the office of a member of the
6          bar of this court at which direction the service was made.

7    Executed this 27th day of February, 2020, at Torrance, California.

8

9                                            _____
                                                        DEBBIE NAWA
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AGNEW BRUSAVICH
SERIOUS INJURY LAWYERS
20355 HAWTHORNE BLVD. · TORRANCE, CA 90503
T: (310) 793-1400    F: (310) 793-1499